**Lloyd W. REYNOLDS, Plaintiff-Appellant,**

v.

**PENNSYLVANIA RAILROAD COMPANY, a corporation, Defendant-Appellee.**

**No. 12517.**

United States Court of Appeals
Seventh Circuit.

May 25, 1959.

Rehearing Denied June 24, 1959.

Michael H. Lyons, Chicago, Ill., Lloyd T. Bailey, Chicago, Ill., for plaintiff-appellant. Bailey & Lyons, Chicago, Ill., of counsel.

William R. Jentes, Robert H. Bierma, Chicago, Ill., A. L. Foster, Max E. Wildman, Chicago, Ill., for appellee.

Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel.

Before SCHNACKENBERG, PARKINSON and KNOCH, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff's cause of action for personal injuries, based upon the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., was ordered dismissed by the district court and plaintiff has appealed.

The amended complaint charged in count I that plaintiff was injured due to the negligence of defendant in failing to furnish him a reasonably safe place in which to work, and in failing to protect plaintiff against the occurrence which resulted in his injury, while he was working pursuant to defendant's orders. In count II it was alleged that the doctrine of *res ipsa loquitur* applied to the case. A motion to strike count II was made by defendant but was never acted upon by the district court. It does not appear from the record that defendant filed an answer to the amended complaint.

When the case was called for trial, the district judge stated that the cause had been the subject of several pretrial conferences, that, pursuant to rule 16 of the Rules of Civil Procedure,[1] the court had segregated the issue of liability from the issue of damages and that plaintiff's counsel might state what plaintiff's evidence (as to liability) would be if the witnesses were called. Plaintiff's attorney thereupon stated:[2]

Plaintiff was injured between 1:00 and 1:30 A.M. on August 2, 1955, while serving as engineer on a locomotive of defendant in its Hawthorne Yards in Indianapolis, Indiana. While the locomotive was moving, plaintiff was hit on the

---

1. 28 U.S.C.A. Rule 16.

2. No jury was impaneled and no evidence was received.

left back side of his head, by a piece of steel, which was about the size of a pint milk bottle and had a sharp point on one end. (This object was received in evidence.)

The Hawthorne Yards is a classification yard where trains are made up as they come in from various railroads. In the area where this incident occurred there are no buildings near the right of way but there is an overhead highway viaduct. Cars loaded with old scrap were hauled from Indianapolis by defendant. Prior to the time of the injury, defendant did a lot of switching of cars along that particular section and plaintiff saw debris and objects along the track there more frequently than otherwise in the Hawthorne Yards, some of these objects being similar in size and shape to the object which hit plaintiff.

In operating the locomotive, it was necessary for plaintiff to keep a portion of his head out of the cab window so that he could watch for signals. His head was in this position when he was struck.

A day or two after the accident, Jack Linn, defendant's claim adjuster, came to the hospital where plaintiff was confined, and stated that defendant "had reports that for some period of time before" plaintiff's injury "there had been debris and objects thrown at the Diesel locomotive as they [*sic*] came into the Hawthorne Yards at night, because they came in with their bright lights on. * * Thrown by other people, he believed to be switchmen, and they were going to investigate this." Assistant foreman of engines Olson told plaintiff when he visited him at the hospital "that there had been reports of objects being thrown at the Diesel engines before I had been injured on August 2, 1955."

Plaintiff's testimony about the statement of Mr. Linn would be corroborated by plaintiff's wife and Robert Van Baker, if called as witnesses.

Engineer C. B. Hartman would testify that he picked up the object in question off the deck of the Diesel locomotive and that he heard it hit the deck or floor of the locomotive and it had been thrown.

The deposition of Robert Van Baker, taken on behalf of *defendant*, would show that he was a yard conductor of defendant and that he was a patient in the same hospital room with plaintiff and heard the defendant's claim agent tell plaintiff "we had had reports of objects being thrown at the engines there in the yards," that "we have had reports" and that "they was [*sic*] going to check into them".

When plaintiff's attorney completed his statement, the court granted defendant's motion to dismiss the case, at plaintiff's costs. The court said: "The facts are clear here that no act of negligence attributable to this defendant has been or can be proved by this plaintiff."

■■ 1. Whether the court erred in dismissing plaintiff's action must be determined by considering the facts appearing in the record in the same way that a court would consider such facts if, at the close of plaintiff's case upon a trial, defendant had made a motion for a directed verdict in its favor. In either event, the court is required to consider the evidence in its aspects most favorable to plaintiff. The issue for us is whether, considering all the foregoing facts and circumstances together with all reasonable inferences favorable to plaintiff, there was any evidence from which a jury could reasonably find defendant guilty of negligence which contributed in whole or in part to plaintiff's injury. O'Day v. Chicago River & Indiana Railroad Company, 7 Cir., 216 F.2d 79, 82. If there was such evidence, then the court erred in dismissing the action.

■ Plaintiff was struck while employed in Hawthorne Yards, owned solely by defendant. No buildings were adjacent to the place in the area where he was injured. Objects similar to that which struck plaintiff had prior thereto been seen lying along the right of way in this area. Defendant hauled from the Hawthorne Yards a considerable amount of scrap iron. It had received reports that debris and objects were, for some period of time before plaintiff was injured, thrown at Diesel locomotives com-

ing into the yards at night because they had their bright lights on. While in one respect a precise analysis of the evidence might show an ambiguity as to whether these reports had come to defendant after, rather than before, plaintiff was hurt, this would not authorize the district judge to resolve the difference upon a motion for a dismissal of the action. He was required to consider this evidence in its aspect most favorable to plaintiff. Van Baker, a witness for defendant, testified that defendant's claim agent said to plaintiff that they *had had* such reports, and again Van Baker said that the claim agent had said that "we have had reports." Only by a trial where the matter could be thoroughly developed in open court, under direct examination and cross-examination, could the time of these reports be correctly ascertained, if the time, considering all the circumstances, were important. Even if the time element is unimportant, whether or not a reasonably safe place in which to work had been furnished to plaintiff by defendant, was for a jury to determine.

In Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73, a woman sued the trustee of a railroad for damages under the Federal Employers' Liability Act. The essence of plaintiff's claim was that she was injured as a result of her employer's negligence in sending her to work in a place he knew to be unsafe without taking reasonable measures to protect her. In her complaint she charged, *inter alia*, that a man entered the building where she was assigned to work in the employer's railroad yards in Memphis, and beat her with a piece of iron, from which she suffered injuries. The employer showed, in support of his motion for summary judgment, that the assailant was not his employee and that the attack was criminal. The Supreme Court reversed both the district court and the court of appeals and held that the case should have been submitted to a jury, saying at page 462 of 332 U.S., at page 142 of 68 S.Ct., that the fact that "the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent [employer] nonetheless had a duty to make reasonable provision against it. Breach of that duty would be negligence, and we cannot say as a matter of law that petitioner's [plaintiff's] injury did not result at least in part from such negligence."

If the case at bar had been tried and evidence establishing the facts herein set forth had been submitted to a jury for consideration, a verdict for plaintiff might well have been returned on the theory that defendant was aware of conditions in the area of its Hawthorne Yards where plaintiff was injured, which created a reasonable likelihood that a locomotive engineer such as plaintiff, in performing the duties required of him, would suffer just such an injury as was in fact inflicted upon him, and that, therefore, defendant failed to exercise due care to furnish him a reasonably safe place in which to work.

In Schulz v. Pennsylvania R. Co., 350 U.S. 523, at page 524, 76 S.Ct. 608, at page 609, 100 L.Ed. 668, the court said:

"The jury trial 'is part and parcel of the remedy afforded railroad workers under the Employers Liability Act,' * * *.

* * * * * *

"In considering the scope of the issues entrusted to juries in cases like this, it must be borne in mind that negligence cannot be established by direct, precise evidence such as can be used to show that a piece of ground is or is not an acre. Surveyors can measure an acre. But measuring negligence is different. The definitions of negligence are not definitions at all, strictly speaking. Usually one discussing the subject will say that negligence consists of doing that which a person of reasonable prudence would not have done, or of failing to do that which a person of reasonable prudence would have done under like circumstances. Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circum-

stances of particular cases. '[W]e think these are questions for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others.' "

For these reasons we must reverse the judgment below and remand this case for trial.

2. Inasmuch as the district court did not purport to dispose of count II, involving the doctrine of *res ipsa loquitur*, we make no further reference to that count. It remains pending in the district court.

For these reasons the judgment of the district court is reversed and this cause, as to counts I and II, is remanded to that court for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded with directions.