421 P.2d 512

**TAM–O–SHANTER INVESTMENTS, INC.,**
**an Arizona corporation, Appellant,**

**v.**

**Carolyn M. POLACEK, Individually and as**
**Executrix of the Estate of Charles G.**
**Polacek, deceased, Appellee.**

**No. 8462.**

Supreme Court of Arizona.

In Banc.

Dec. 22, 1966.

Charles A. Stanecker, Phoenix, for appellant.

Gust, Rosenfeld & Divelbess, and Richard A. Segal, Phoenix, for appellee.

UDALL, Justice.

In the trial court plaintiff, Carolyn M. Polacek, individually and as executrix of the estate of Charles Polacek, was awarded the sum of $16,784.86 as the value of architectural services performed by the firm of Charles Polacek, allegedly pursuant to a contract, under the terms of which Polacek was to prepare working drawings for an apartment that defendant proposed to build. Defendant brings this appeal from the judgment and from the trial court's denial of defendant's motion for a new trial.

On this appeal defendant contends that judgment was erroneously entered for plaintiff because there was no substantial evidence to support the trial court's conclusion that a contract had in fact been executed. The following facts and evidence are pertinent to this issue.

On January 8, 1960 Charles Polacek sent the following letter to the defendant corporation (paragraphs are numbered for convenient reference later in this opinion):

(1) "This letter is to outline professional services we are prepared to perform for the proposed apartment building to be located at 1300 E. Thomas Road, Phoenix, Arizona, which services were discussed previously with members of our firm.

(2) "Our fee for this work will be four percent of the cost of improvement. Preliminary work shall be at the rate of $9.00 per hour, to be applied against the fee when project enters into construction development stage. In addition we will be reimbursed for all out-of-pocket expenses, including such items as blue printing, colored renderings, and any other reproduction work.

(3) "We are preparing the necessary preliminary drawings for zoning purposes and for your review.

(4) "We would appreciate receiving from you a signed carbon copy of this letter of intent. *A standard form of AIA agreement in conformity with the above outlined highlights will be prepared after approval of zoning and notice to proceed with construction drawings.*

(5) "With thanks for your selection of our firm to do this work, I am
Very truly yours,
s/ Charles G. Polacek.
Charles G. Polacek, AIA
"APPROVED and ACCEPTED
s/ B. ZELDEN
Date: Feb. 1, 1960"

It was plaintiff's claim in the trial court and it is her contention on this appeal that the letter, along with the standard AIA form referred to in paragraph No. 4, constituted a complete contract between Charles Polacek and the defendant. On the other hand defendant claims that the letter was merely preliminary negotiation, that the execution of a contract was, as indicated in paragraph No. 4, subject to the condition precedent of defendant giving notice to proceed, that there is insufficient evidence to support a finding that the condition occurred, and that the drawings were prepared not for Tam-O-Shanter but for the benefit

of Charles Polacek and other individuals who purchased the Thomas Road property after defendant was financially unable to buy the land or to proceed with the project. All of defendant's points will be answered if we simply review the evidence in order to determine its sufficiency to sustain the obvious finding of the trial court that a contract was executed between Charles Polacek and the defendant.

The record clearly indicates that on the issue of whether a contract existed plaintiff had no direct evidence, other than the letter and the AIA form referred to therein. Charles Polacek was deceased, and at plaintiff's objection Bernard Zelden, who signed the letter quoted above on behalf of Tam-O-Shanter Inc., was precluded, by operation of A.R.S. § 12–2251, from giving any meaningful testimony as to what transpired between himself and Charles Polacek.

Apparently, in view of the above, plaintiff was either forced or content to assume that the letter and the form to which it referred were sufficient evidence on the question of there being a contract, for all of plaintiff's testimonial and the remainder of her documentary evidence was not aimed primarily at proving a contract, but rather at establishing (1) that the drawings were substantially completed, (2) the value of the work performed, and (3) that defendant was billed for the job. For example, plaintiff's case was opened with the testimony of Mrs. Polacek, to the effect that she handled, for her husband's firm, various billings received by the firm from different persons for work which they performed for Polacek, in order to enable him to perform his alleged contract with the defendant. The billings are included as exhibits in the record. Mrs. Polacek further testified that a billing for the entire cost of construction drawings was mailed to Mr. B. Zelden, c/o Tam-O-Shanter Investments, on September 14, 1960.

With further reference to the question of performance and plaintiff's right to recover, plaintiff offered the expert testimony of Albert McMullan, who estimated that the total cost of the proposed apartment building would have been not more than $665,000. Presumably plaintiff used this testimony as a basis for determining the amount due for plaintiff's work, under the terms of the alleged contract.

Finally, plaintiff offered the testimony of Robert Craik, an employee of the Polacek firm. Basically Craik's testimony related to the completeness of the drawings which were submitted in evidence and to the nature of the standard AIA form referred to in the letter. As to what went on between Polacek and Zelden and as to the terms of the alleged contract, Craik testified: "I had no knowledge of my own of what the arrangements were."

■ In view of all the testimony referred to above, the trial court was justified in concluding that the firm of Charles Polacek did substantially complete construction drawings for an apartment building. However, that such finding is sufficiently supported by the evidence does not answer the main question raised on this appeal, namely, whether the drawings were prepared for Tam-O-Shanter pursuant to a contract executed between Charles Polacek and the defendant. Certainly the defendant cannot be charged with the cost of the drawings if there was no contract, and the plaintiff could not sufficiently prove that such a contract existed merely by showing that performance was rendered.

This brings us to the point where we can consider the effect of the only direct evidence relating to the question of whether a contract was ever consummated. As indicated previously, it was and remains plaintiff's contention that the letter and the standard form referred to therein constituted a contract because the two considered together left no material element to be decided between the parties. The gist of defendant's contention on this appeal is that plaintiff's evidence does not sufficiently bring the letter and the standard form together so as to make a contract of the two. Certainly the letter alone did not

accomplish this end at the time it was written, because it clearly states in paragraph No. 4 that the AIA form was not to be executed or effective until the happening of two events at some time in the future (i. e.) approval of zoning and notice to proceed with construction drawings. It seems that Charles Polacek and the defendant contemplated that a final, binding contract for the preparation of construction drawings would not and could not be executed until the occurrence of these conditions precedent. Such contemplation would have been in harmony with the custom of the industry, as described by plaintiff's witness, Robert Craik:

"Q. Mr. Craik, isn't it a fact that in the practice of architecture, it is customary for an architect on a proposed development to enter into a preliminary agreement depending on financing being obtained for a particular project and the architect agreeing to supply the necessary preliminary drawings to submit for financing purposes?

"A. Yes.

"Q. That is a customary practice in the profession?

"A. Yes.

"Q. And you do so based upon the fact that the financing is obtained and a building can be constructed that you will then have an architectural job to do the entire work for the job?

"A. Yes.

"Q. Are you prepared to state that was not the condition which existed between Polacek and Mr. Zelden at the time this transaction took place?

"A. I had no knowledge of my own of what the arrangements were."

Since the letter and the AIA form could not have constituted a complete contract at the time the letter was written and received, it remains to be considered whether such a contract came into existence later. That the letter contemplated the future execution of an AIA contract cannot be doubted, and the testimony of Mrs. Pola-

cek conclusively demonstrates that Bernard Zelden declined to sign and return a completed, standard AIA form to the Polacek firm. She testified:

"A. The contract was prepared, but Mr. Zelden did not sign and return it."

Zelden's reluctance to execute the form contract on behalf of Tam-O-Shanter is understandable, in view of the following facts which were established by the evidence: (1) two months after the letter was sent financial difficulties prevented Tam-O-Shanter from buying the land on Thomas Road, (2) the land was purchased by Bill Somers, for his own benefit and for the benefit of others, including Charles Polacek, and (3) Tam-O-Shanter never obtained financing for the proposed apartment building.

Aside from the fact that execution of a standard AIA contract was contemplated but never accomplished, there is a further obstacle to finding that a contract came into existence between Charles Polacek and Tam-O-Shanter. Paragraph No. 4 of the letter indicates that execution of the AIA agreement was subject to the condition precedent of notice being given to proceed with construction drawings. Defendant claims that the evidence is insufficient to support a finding that such notice was given. The only evidence relative to this point is the following testimony of Mrs. Polacek:

"Q. Was there any agreement of which you have cognizance to indicate that Tam-O-Shanter agreed to any more than what is reflected in this letter of January 8, 1960?

"A. Yes. We were told to proceed with the final drawings.

"Q. When were you told to proceed?

"A. I don't have an exact date, because that was not recorded and it never is recorded on the cost records, *but the reason I know we were told is because after preliminary drawings are prepared, and if there is a time lapse between the preliminary drawings and the finals, my husband would have prepared a bill at the $9 an hour [preliminary work rate].*

*which is stipulated in the letter and mailed it, and wouldn't have done any more work until we were authorized to do so. So we were authorized to proceed with the finals which we did.*

*There was no bill at $9 an hour. We proceeded with the finals at Mr. Zelden's request."*

It appears that Mrs. Polacek could not testify that Zelden, on behalf of Tam-O-Shanter, definitely and specifically authorized the Polacek firm to proceed with construction drawings. She inferred that such notice was given because, to the best of her knowledge, there had been no billing for the preliminary work. We do not think that this mere inference from circumstances can be elevated to the position of being classified as evidence which reasonably supports a finding that notice to proceed was given. And, even assuming that her testimony is sufficent in this respect, it merely raises another, as yet unmentioned obstacle to finding that a contract for construction drawings was ever consummated.

It will be recalled that notice to proceed with construction drawings was a condition precedent to the execution of an AIA standard form, and that plaintiff's theory of the case was that the letter and the form made the contract. However, the record indicates that at least two, different so-called "standard" forms were valid and in existence at the time the letter was written. A sample of each form is included in the record, and from examining them we find that the blanks and terms of the two forms are materially different. Robert Craik testified that he customarily used one of the forms, but the letter does not designate either form and Mrs. Polacek gave no indication of which form she completed and sent to Bernard Zelden. Aside from the fact that Zelden declined to sign and return the form, and that its

execution was apparently contemplated as the agreement under which construction drawings would be prepared, the trial court could not, and this Court will not choose one form as *the* one contemplated by the parties.

■ In view of the foregoing we think that at best the evidence in this case demonstrates that Charles Polacek and the defendant entered into a type of preliminary negotiation and dealing which was, according to the testimony of plaintiff's own witness, customary in the profession, and that due to all the circumstances, especially those which made defendant financially unable to buy the land or build the project, the preliminary dealings between the parties failed to materialize into a final contract for the preparation of working drawings. The parties contemplated the execution of a contract which was never executed and which was specifically rejected by the defendant. The fact that the drawings were made is of little importance on the issue of whether a contract existed because the evidence reasonably suggests that the work may have been done for the personal benefit of Charles Polacek and the other individuals who bought the property. Regardless of why the drawings were completed, for all the reasons discussed in this opinion, we do not think that the evidence was sufficient to support a finding that the work was done pursuant to a final, valid contract between the defendant and Charles Polacek. Without such a contract there is no basis for plaintiff's claim that defendant is indebted to plaintiff for the cost of the drawings.

The judgment for plaintiff is reversed, and the trial court is directed to enter judgment for the defendant.

STRUCKMEYER, Jr., C. J., BERNSTEIN, V. C. J. and LOCKWOOD and McFARLAND, JJ., concur.