470 P.2d 91

**Thomas TROLLOPE** and Bernice Trollope, his wife, Richard L. Stenz and Dorothy Stenz, his wife, and Peter Kruidenier, Appellants,

**v.**

Ralph L. **KOERNER** and Bonnie Koerner, his wife, Appellees.

**No. 9825.**

Supreme Court of Arizona,
In Banc.

May 29, 1970.

Rehearing Denied June 30, 1970.

Bentley & Reiss, by Burton Bentley and Barry A. Reiss, Phoenix, for appellants.

Jennings, Strouss & Salmon, by Nicholas Udall and Riney B. Salmon II, Phoenix, for appellees.

EUBANK, Judge of the Court of Appeals.

This is a landlords' suit for damages resulting from a would-be tenant's refusal to sign a five-year lease. We hold that the Statute of Fraud bars recovery for breach of contract and that no sustainable cause of action is stated for alleged fraud, but we remand for trial on quasi-contract principles a claim for expenses of altering the premises in anticipation of the landlord-tenant relationship.

We first consider the posture of the case, since it controls our view of the facts. Unfortunately, a jury trial was commenced without the case having been subjected to a pretrial conference. Judgment was rendered against the plaintiff-appellant landlords on defendants' motion following opening statements. Defendants' counsel stated that the motion for judgment was made pursuant to Rule 12(b) (6) of the Rules of Civil Procedure, 16 A.R.S., which deals with the defense of failure to state a claim upon which relief can be granted. The motion was based upon the plaintiffs' complaint, their opening statement, and the deposition of the plaintiff Thomas Trollope, plaintiffs' principal negotiator in the matter in suit. The motion was immediately argued and orally granted by the court.

We first note that the motion as advanced was improper under the terms of Rule 12(b). By that subrule, as amended, if a Rule 12(b) (6) motion introduces matters outside of the opponent's pleading which are presented to and not excluded by the court, " * * * the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." This means that the 10-day notice requirement of Rule 56(c) applies. 2A, Moore's Federal Practice (2nd Ed., 1968 recomp.) § 12.09, note 25, page 2303. Here, the matters presented outside of the plaintiffs' pleading were not excluded by the court, and the motion was made without advance notice.

On appeal, defendants have suggested that their motion might more properly be considered as one for a directed verdict. Within the limitations to which we will refer, a motion for a directed verdict is procedurally permissible after an opponent's opening statement. 5, Moore's Federal Practice (2nd Ed., 1966 recomp.), §§ 50.02 [1], 50.04. Since there is no claim or indication that plaintiffs were prejudiced by a mislabeling of the motion, and since the substantive issue on appeal is the propriety of granting *any form of dispositive motion* at this stage of trial, we will treat defendants' motion as if it had been a motion for a directed verdict.

A federal appellate court has stated that a motion for a directed verdict

**14**

after an opponent's opening statement is a vestige of past practice, without specific authorization in the modern Rules of Civil Procedure.[1] It is tolerated, only, as a means of ending quickly a cause that clearly cannot be won. We have no rule or statute which requires that a party make an opening statement, and consequently disposition is justified only when a party has said "too much," rather than "too little,"[2] as where a plaintiff makes a fatal admission or unequivocally reveals an absolute defense.[3] Such a motion for directed verdict should never be granted without giving the opposing party an opportunity to amend or supplement his statement, or to make an avowal or an offer of proof.[4] In the present case, plaintiffs made a supplemental statement to the court and an offer of proof. We must assume plaintiffs' ability to prove the facts so advanced,[5] and we must also view the stated and proffered facts before us in the light most favorable to plaintiffs' position.[6] So viewing the facts, the court cannot properly grant the motion unless the admissions of counsel are conclusive upon *every theory of liability presented by the pleadings.*[7]

Plaintiffs contend that we should not consider the depositions on file in the case. We take this to refer to the deposition of the plaintiff Thomas Trollope, since plaintiffs quoted certain portions of one of the defendants' deposition as a part of their offer of proof. As to the deposition of Trollope, we agree with plaintiffs. It is true that from the standpoint of an adverse party, the deposition of a party is independent, or original, evidence,[8] which may be used " * * * upon the hearing of a motion * * *" for "any purpose." Rule 26(d) and 26(d)(2), Rules of Civil Procedure. This is broad language, but use of an opponent's deposition in support of the kind of motion made here would subvert either the notice and opportunity-to-defend provisions of Rules 12(b) and 56,[9] referred to above, or the orderly presentation of a case at trial. We will accordingly only consider those portions of the deposition of one of the defendants which was made a part of plaintiffs' offer of proof.[10]

We proceed to the facts. The plaintiffs are the owners of a commercial office building in Phoenix. The defendant-appellee Ralph L. Koerner is a dentist. The defendant-appellee Bonnie Koerner is his spouse, and since she has no active role in the matter in suit, we shall hereafter refer to defendants in the singular, as "Koerner", or "defendant." Koerner and the plaintiff Thomas Trollope had been friends for some time prior to July, 1965, when Koerner asked Trollope if there was any empty space in the office building into which Koerner could move his dental practice. Trollope showed Koerner an unpartitioned area of some 950 square feet, later called "Suite 112." Koerner liked the space, and he and Trollope proceeded to negotiate orally the basic terms of a lease.

1. Lampka v. Wilson Line of Washington, Inc., 117 U.S.App.D.C. 55, 325 F.2d 628 (1963).

2. See Winter v. Unaitis, 123 Vt. 372, 189 A.2d 547, 5 A.L.R.3d 1400 (1963).

3. Tuck v. Chesapeake & Ohio R. Co., 251 F.2d 180 (4 Cir. 1958).

4. See, generally, the cases collected in Annot., 5 A.L.R.3d 1405 (1966).

5. Scarborough v. Central Arizona Light & Power Co., 58 Ariz. 51, 117 P.2d 487, 138 A.L.R. 866 (1941).

6. Reynolds v. Pennsylvania R. Co. 267 F.2d 231 (7 Cir. 1959).

7. Hastings v. Harkoff, 61 Wash.2d 648, 379 P.2d 914 (1963).

8. 4, Moore's Federal Practice (2nd Ed.) § 26.29.

9. As has been said, a motion for directed verdict after opening statement is not the same as, or similar to, a motion for summary judgment. Malloy v. Providence Hospital, 111 U.S.App.D.C. 244, 296 F.2d 366 (1961).

10. Compare Terhune v. Margaret Hague Maternity Hospital, 63 N.J.Super. 106, 164 A.2d 75 (1960) at pages 79–80, where the appellate court scanned the depositions for indications of a valid cause of action, although the trial court had not.

The parties agreed on many things, including, among others, the term of the lease (five years, with renewal options), the monthly rent and the amount of a security deposit ($356.50 each), and a formula for determining rent during the optional renewal periods. There was a general agreement that the owners would make all of the improvements necessary to prepare the premises for a dental office, except for certain decorating and electrical and plumbing installation costs. The term of the lease was to commence on October 1, 1965, or whenever occupancy took place. Other provisions were agreed on, and it is plaintiffs' position that Koerner and Trollope reached an essentially complete agreement on the terms of the proposed lease.

The parties also agreed, in the language of plaintiffs' opening statement, that the oral agreement "be committed to a writing * * *" The parties each retained separate counsel for this purpose. Several drafts of the proposed lease were prepared. None of these were signed by Koerner. A final draft meeting all objections was prepared, signed by all of the plaintiffs, and forwarded to Koerner's attorneys for Koerner's execution. The precise dates of these events are not clear, but the final draft must have been forwarded to Koerner's attorneys by the first of October, 1965.

In the meantime, and commencing about the end of July, 1965, Koerner frequently visited Suite 112. On one such occasion, he paid a carpenter who was an employee of plaintiffs $60 and told him to commence the construction necessary to adapt the space to a dental suite. At another time he gave plaintiffs the sum of $500, either for plaintiffs to disburse for his account (as plaintiffs assert and as we assume), or as "good faith" money (as is contended by defendant in a counterclaim to recover the sum). Koerner also hired a local dental supply company to prepare plans for the new suite, incurred expense in ordering special carpeting, purchased and installed lead in a wall for an X-ray machine, helped pay for the installation of a shower and made his own arrangements for special decorating. During this period, according to that portion of plaintiffs' complaint which charges fraud, Koerner

"* * * represented to plaintiffs that a lease arrangement existed between plaintiffs and defendants and that there was no question about the existence or formalization of such a lease; defendants represented to plaintiffs that they would execute the lease agreement forthwith and that the lease arrangement was acceptable to defendants in all respects."

Allegedly acting on the strength of these representations, now alleged to be false, and upon the long friendship between Koerner and Trollope, plaintiffs began adapting the empty space to a dental suite. During August and September, 1965, plaintiffs allegedly spent $6,362.13 for this purpose.

Plaintiffs completed the necessary alterations by the end of September, 1965. The record indicates that a number of disputes had arisen between the parties over the amount and allocation of construction expenditures. Plaintiffs interpreted Koerner's failure to sign the lease at this time as a "stall." The situation remained static until an evening in October, 1965, when a telephone conversation between Trollope and Koerner in which Trollope demanded that Koerner pay rent for the month of November, 1965, ended in acrimony. Koerner stated, in a portion of his deposition made a part of plaintiffs' offer of proof, that at the time of this conversation the parties were in essential agreement on everything except the date of commencing occupancy and paying rent. Koerner felt himself impugned by Trollope's remarks during the telephone conversation, and his attorneys advised plaintiffs the next day that he would not execute the lease.

Plaintiffs' "First Cause of Action" alleges that Koerner "promised to accept" Suite 112, and that in reliance upon such promise, plaintiffs expended $6,362.13 remodeling the premises "for the benefit of defendants", and that "said improvements

were constructed to suit the taste, needs and directions of the defendants and were specifically for their benefit." It is then alleged that defendant failed to take possession of the suite and renounced "said lease agreement," and that by virtue of such "breach," plaintiffs were damaged to the extent of the $6,362.13 spent, plus $1,782.50 for lost rent to March 1, 1966, when another tenant was found, and $1,000 for expenses of again remodeling the premises to suit such new tenant.

The key allegations in the fraud count, or "Second Cause of Action," are the representations quoted above, and the one representation alleging its falsity. The damages claimed are the same as those claimed in the first cause of action, except for an added prayer for punitive damages. Plaintiffs' counsel made the following remarks with respect to the claim of fraud in his opening statement:

"We will show that it was the doctor's design and plan to defraud my clients, right from the very inception of their meetings and negotiations; that he had a preconceived plan and that at such time as my clients had spent enough monies that they could not afford to lose the doctor as a potential lessee tenant in this building that he was going to pull the rug out fron [sic] under them and enforce other provisions and to gain some free rental from them, in particular, the month of November * * *"

The defendant's answer included a counterclaim with respect to the $500 advanced to plaintiffs. This pleading alleged the commencement of preliminary negotiations, the good faith and honest intent of the defendant and the defendant's payment of the $500 as an expression thereof, the contemplation of an executed formal written agreement of lease, and the failure of a meeting of the minds due to the "rapacious maneuverings" of the plaintiff, Thomas Trollope. Several weeks after judgment had been rendered against plaintiffs on their complaint, defendant applied for judgment in the nature of a summary judgment on the counterclaim. Although the counterclaim was vigorously contested and one of the plaintiffs executed an affidavit stating that the $500 was applied to "* * * items of construction for which Ralph L. Koerner was obligated and and [sic] agreed to pay," defendant's motion was granted without the taking of any testimony on the subject.

We come to the law. Our task, as indicated, is to determine whether on a favorable view of the facts plaintiffs' pleadings present any sustainable cause of action.

■ It hardly requires stating that the 5-year lease agreement falls squarely within subsection 6 of our Statute of Frauds—A.R.S. § 44–101, subsec. 6. This is true whether we label the oral undertaking by Koerner one *to lease*, or one *to execute a written lease*, since an agreement to reduce to writing a contract within the Statute of Frauds must itself be in writing to be enforceable. 49 Am.Jur., Statute of Frauds, § 6, quoted in Newkirk v. Moley, 343 S.W.2d 213, 216 (Mo.App.1960); Annot., 58 A.L.R. 1015, esp. at 1020 (1929) and *see* T. D. Dennis Builder, Inc. v. Goff, 101 Ariz. 211, 214, 418 P.2d 367, 370 (1966). Plaintiffs' assertion of an original mutual oral agreement as to the terms of the lease does not, of course, overcome the Statute. See, e. g., Crane v. Franklin, 17 Ariz. 476, 479, 154 P. 1036, 1037 (1916), modifying a prior decision in the same case reported at 16 Ariz. 501, 147 P. 718 (1915).

■ Plaintiffs strenuously urge two lines of argument in an effort to avoid the effect of the Statute. First, they argue that the lease agreement was taken out of the Statute by part performance. Secondly, it is argued that defendant is estopped to raise the Statute as a defense. Throughout both arguments heavy reliance is placed upon the fundamentally sound, if somewhat loosely applied, principle that the Statute of Frauds is intended to be a shield and not a sword, and that it should not become an instrument by which fraud is perpetrated. See, e. g., Diamond v. Jacquith, 14 Ariz. 119, 125 P. 712 (1912).

■ This court has squarely held that notwithstanding the procedural merger of law and equity, the equitable doctrine of part performance is inapplicable in a suit where only *money damages* are sought. Evans v. Mason, 82 Ariz. 40, 44, 308 P.2d 245, 248 (1957). This is the widely accepted general rule. Restatement, Contracts, §§ 197, 327 (Comment f); 2 Corbin on Contracts, § 422.

■ A landlord in the position of the plaintiffs here has a possible remedy by way of specific performance. Rowland v. Cook, 179 Wash. 624, 38 P.2d 224, 101 A.L.R. 180 (1934); Annot., 101 A.L.R. 185 (1936). Whether such a remedy would be granted would depend upon all of the equities of the case. Consistent with the rule noted above, however, a landlord is denied a remedy in damages for breach of an oral lease agreement within the Statute. Cram v. Thompson, 87 Minn. 172, 91 N.W. 483 (1902); Seaman v. Aschermann, 51 Wis. 678, 8 N.W. 818 (1881); 3 Thompson on Real Property (1959 Replacement Volume), § 1101; Burby on Real Property (Hornbook Series, 3rd Ed. 1959), § 44. There are a few cases reaching a contrary result, e. g., Artcraft Specialty Co. v. Center Woodland Realty Co., 40 Ohio App. 125, 178 N.E. 213 (1931), noted, 16 Minnesota Law Review 446 (1932). We adhere to the general rule and the rule of Evans v. Mason, supra.

■ Carrying their argument further, plaintiffs assert that under the facts it could be found that they *fully* performed their part of the oral lease agreement, and that essentially nothing remained to be performed but the payment of money by the would-be lessee. We take it to be fundamental that one cannot claim full performance of a contract, such as a lease, which would be, if performed, concededly executory on both sides. The cases relied upon by plaintiffs in this regard concern contracts which had been wholly executed by the plaintiff.[11] On the other hand, by coming into court and seeking specific performance, a landlord can effectively *tender* a prospective full performance.

■ Plaintiffs also make a passing reference to a line of authority holding that a party's judicial admission of the existence of an oral contract renders the Statute of Frauds ineffective.[12] These cases are of no help to plaintiffs here, since Koerner did not in his pleadings or deposition ever admit the existence of a completely settled contract.[13]

■ In their estoppel argument, plaintiffs rely upon both "equitable estoppel" and "promissory estoppel." The principal Arizona authority relied upon is Waugh v. Lennard, 69 Ariz. 214, 211 P.2d 806 (1949), which considered both of these remedial doctrines. As stated in Waugh and in Weiner v. Romley, 94 Ariz. 40, 381

---

11. Diamond v. Jacquith, 14 Ariz. 119, 125 P. 712 (1912) (wholly performed employment contract); Cavanagh v. Kelly, 80 Ariz. 361, 297 P.2d 1102 (1956) (executed personalty brokerage transaction); Besse v. McHenry, 89 Mont. 520, 300 P. 199 (1931) (defendant lessee under an oral lease had occupied the land for the full term of the lease).

12. E. g., Zlotziver v. Zlotziver, 355 Pa. 299, 49 A.2d 779 (1946); Hagedorn v. Hagedorn, 194 Iowa 172, 188 N.W. 980 (1922).

13. Where the requirements of the Statute of Frauds have been met, and the parties are in agreement on essential terms, a court of equity will imply the "usual and ordinary covenants" in order to enforce the otherwise valid lease. Reno Club v. Young Inv. Co., 64 Nev. 312, 182 P.2d 1011, 1020, 173 A.L.R. 1145 (1947). But a lease agreement will not be enforced if it appears from the face of the agreement that any of its terms, no matter how seemingly unimportant, are left open to future conferences. In such cases, there is no complete agreement to be enforced. Cypert v. Holmes, 81 Ariz. 64, 66, 299 P.2d 650, 651 (1956); and compare Tam-O-Shanter Investments, Inc. v. Polacek, 101 Ariz. 493, 421 P.2d 512 (1966). The essential requirements of a memorandum of agreement to lease sufficient to satisfy the Statute of Frauds are set forth in Custis v. Valley National Bank of Phoenix, 92 Ariz. 202, at 206, 375 P.2d 558, at 561 (1962).

P.2d 581 (1963), the distinction between the two is that to work an equitable estoppel or "estoppel in pais," the representation in question must be of some present or past fact, while promissory estoppel rests upon a promise to do something in the future. Waugh, supra, at 69 Ariz. 224, 211 P.2d 812; Weiner, supra, at 94 Ariz. 45, 381 P.2d 584. The principle of promissory estoppel is expressed in § 90 of the Restatement of Contracts, and is to be applied, according to that authority " * * * if injustice can be avoided *only* by enforcement of the promise." (Emphasis added).

We need not here state all of the elements of these complimentary principles of estoppel. It suffices for our purposes to state that both forms require a justifiable right to rely on the part of the representee or promisee. Waugh, supra, at 69 Ariz. 223–224, 211 P.2d 812. We think a finding of justifiable reliance under the facts of this case would frustrate the basic policy and effect of the subsection of the Statute of Frauds (A.R.S. § 44–101, subsec. 6) involved here.[14]

A landlord, like any entrepreneur, is vulnerable to the vagaries of the marketplace. His legal position, however, is a strong one. He owns the land, and he has at his side the well-settled law of trespass. He may condition use of his land on such terms as he chooses. If *he* stands by while another, assuming himself to be a lessee under an oral agreement, makes substantial improvements, *he* may well be held estopped to deny the lease. Cress v. Switzer, 61 Ariz. 405, 150 P.2d 86 (1944). But because of their different positions, estoppel will not be readily applied against a potential tenant. There is nothing in the alleged or proffered facts here which suggests a case for estoppel. There is no suggestion that Koerner ever indicated that he *had signed* a lease, or that he did not intend to sign a lease. It clearly appears to the contrary, by plaintiffs' own statement of their

case, that both parties contemplated the execution of a written lease. The Statute of Frauds applies to friends as well as nonfriends; we do not think that a friendly relationship without substantially more can work an estoppel and validate the contract.

We accordingly hold that plaintiffs have no remedy in damages for breach of contract. But that does not mean that they are entirely out of court. There is a line of authority which holds that where a lease agreement is unenforceable for lack of a writing or certainty as to terms, a landlord who undertakes to make significant improvements to suit the potential lessee in anticipation of the lease may have a quasi-contractual recovery for the expense of such improvements to the extent that they are or were intended to be exclusively beneficial to the potential lessee. Minsky's Follies of Florida, Inc. v. Sennes, 206 F.2d 1 (5 Cir. 1953); Annot., 59 A.L.R. 604 (1929); and see generally, 3 Williston on Contracts (3rd Ed.), § 534.

Such a recovery would appear to be clearly appropriate here, to the extent that expenses were reasonably incurred in good faith for Koerner's benefit in his anticipated use of the premises, and providing that Koerner's ultimate refusal to perform was not caused by unjustified conduct on the part of the plaintiffs. That Koerner had no intention of incurring such a liability independent of execution of the entire lease agreement is not controlling, since a quasi-contractual obligation is imposed " * * * for the purpose of bringing about justice without reference to the intention of the parties." 1 Williston on Contracts (3rd Ed.), § 3A, p. 13.

It is true that plaintiffs' complaint speaks of a "breach" of contract, and does not specifically allude to a quasi-contractual theory of recovery. But the "First Cause of Action" does state that improvements were constructed at the direc-

14. We are not here dealing with a subsection of the Statute of Frauds which has a judicially recognized tendency to frustrate normal human expectations. Cf. Co-op Dairy, Inc. v. Dean, 102 Ariz. 573, 575, 435 P.2d 470, 472 (1967).

tion and "for the benefit of defendants." Where an express contract is pleaded, it has been held unnecessary to plead a claim for recovery in *quantum meruit*, even though the latter is the only available basis of recovery. See State ex rel. Gary v. Fireman's Fund Indemnity Co., 67 N.M. 360, 355 P.2d 291, 84 A.L.R.2d 1072 (1960), and the annotation at 84 A.L.R.2d 1077 (1962), which make reference to the appropriate cognates of our own Rules of Civil Procedure, especially Rule 8. *See*, also, Spitalny v. Tanner Const. Co., 75 Ariz. 192, 254 P.2d 440 (1953), overruled in another respect in Schwartz v. Schwerin, 85 Ariz. 242, 250, 336 P.2d 144, 149 (1959). (This is not to say that the proof need not establish either an express contract or a claim for recovery in *quantum meruit*. One or the other cause of action must be proved but both theories cannot exist simultaneously in the final analysis. Brown v. Beck, 68 Ariz. 139, 143, 202 P.2d 528 (1949); Shun v. Hospital Benefit Association, 89 Ariz. 12, 18, 357 P.2d 603, 606 (1960)). While the theoretical bases of recovery differ somewhat as between *quantum meruit* or implied contract (contract implied-in-fact) and quasi-contract (contract or obligation implied by law), we see no reason why the same result should not follow as a matter of pleading where the true basis of recovery rests in quasi-contract.

There being no pretrial conference to define and narrow the issues, the cause went to trial on a complaint which would support a quasi-contractual recovery for the $6,-362.13 allegedly spent for defendant's benefit. Plaintiffs should have an opportunity to prove that claim. Occupancy is not alleged, and no other damages are recoverable under this theory.

 Since the right to rely is one of the nine essential elements of a claim for fraud, what we have said about plaintiffs' claim of estoppel disposes of their "Second Cause of Action," as pleaded. While Arizona recognizes a cause of action for "promissory fraud"—the making of a promise without intent to perform—see Caldwell v. Tilford, 90 Ariz. 202, 205, 367 P.2d 239, 241 (1961) a breach of contract is not fraud, 37 Am.Jur.2d, Fraud and Deceit, § 60, and the very facts which plaintiffs have relied upon to show defendant's intimate involvement in the prospective lease agreement negate any fraudulent intent on his part in the original negotiations. The specific theory of fraud advanced by plaintiffs' counsel in his opening statement, quoted above, which would seemingly support only minimal damages, is by no stretch of the imagination pleaded with particularity in plaintiffs' complaint, as required by Rule 9(c) of the Rules of Civil Procedure, 16 A.R.S. It is worth bearing in mind that charging fraud is a serious matter, and it should never be alleged routinely, as a makeweight or as a hoped-for panacea for an otherwise imperfectly perceived remedy.

 The record shows a clear factual issue with respect to the $500 payment made by Koerner to the plaintiffs. If the purpose of the payment was in the nature of a deposit, referable to the entire prospective unexecuted contract, then it should properly be returned to the defendant. If, on the other hand, it was as plaintiffs contend given to them to defray expenses currently being incurred by defendant for his benefit, valueless to plaintiffs, there is no reason why it should be refunded.

The judgments of the trial court are reversed and the case is remanded for further proceedings consistent with this opinion.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and McFARLAND and HAYS, JJ., concur.

NOTE: Justice JESSE A. UDALL having disqualified himself, the Honorable WILLIAM E. EUBANK was called in to sit in his stead and participate in the determination of this appeal.