**CHEVRON U.S.A. INC., a Pennsylvania corporation, Plaintiff–Counterdefendant–Appellee–Cross–Appellant,**

v.

**W. Scott SCHIRMER, Defendant–Counterclaimant–Appellant–Cross–Appellee.**

**Nos. 91–16580, 91–16601, 92–15688 and 92–15821.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1993.

Decided Dec. 16, 1993.

N. Warner Lee, Charles L. Chester, and Susan M. Mukai, Ryley, Carlock & Applewhite, Phoenix, AZ, for plaintiff-counterdefendant-appellee-cross-appellant Chevron U.S.A. Inc.

Janet Napolitano and Steven J. Labenksy, Lewis & Roca, Phoenix, AZ, for defendant-counterclaimant-appellant-cross-appellee W. Scott Schirmer.

Before: FLETCHER, POOLE, and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Chevron U.S.A. Inc. ("Chevron") appeals the entry of summary judgment in favor of W. Scott Schirmer ("Schirmer") on Chevron's suit for specific performance of an option contract to purchase real property. Schirmer appeals the entry of summary judgment for Chevron on his counterclaim for damages sustained from Chevron's recording of notice of lis pendens on the property. Both sides appeal the denial of their requests for attorneys' fees. We affirm the summary judgment against Chevron denying specific performance and the denial of its fee request, but reverse the summary judgment against Schirmer on his counterclaim. We also reverse the denial of Schirmer's fee request, and remand for the determination of reasonable fees.

## I. Facts

In 1987, Schirmer Properties[1] owned a 37.8 acre tract of land in Peoria, Arizona, a small community near Phoenix. On May 14, 1987, the partnership entered into an option contract with Chevron to sell it a 200′ × 200′ corner parcel of that tract, upon which Chevron intended to build a service station and convenience store. The option provided, in relevant part, that

> [o]n or before the 13th day of November, 1987, Buyer [Chevron] may exercise this Real Estate Purchase Option (hereinafter called "Option") by mailing or delivering to Seller (or any one of them if more than one Seller) at c/o Scott Schirmer [address], a copy of this Option signed on behalf of Buyer. If Buyer exercises this Option by mail, such exercise shall be deemed valid and effective upon mailing.

> Upon exercise of this Option by Buyer, all the terms and conditions set forth herein shall constitute the contract of Seller to sell and the contract of Buyer to buy the Property.

Chevron failed to exercise the option before it expired.[2]

The record does not definitively reveal why Chevron failed to simply sign the option and timely deliver it to Schirmer, thereby binding the parties to the contract. Zoning and permit issues, for example, were seemingly covered by the option:

> Notwithstanding any other provision of this Option to the contrary, Buyer shall have no obligation to pay the balance of the purchase price until ten (10) days after obtaining all necessary rezoning and permits. If the necessary rezoning and permits cannot be obtained or if they are available only upon terms and conditions which are unsatisfactory to Buyer, Buyer may rescind the exercise of this Option and the Deed deposited in escrow by Seller shall be returned to Seller.

One possibility is that Chevron badly miscalculated the option expiration date. (An internal Chevron memorandum suggests the author's confidence that "we can receive all necessary permits prior to our *December 21, 1987* expiration of option") (emphasis added).

The record reveals that the passing of the expiration date did not bring a halt to either side's efforts to secure the necessary governmental permits, a quest aided by Schirmer's real estate agent, Robert Broyles. Chevron characterizes the continuing effort and other instances of continued interaction as evidence that the parties "at all relevant times recognized that there existed an agreement between them for Chevron to buy the Property," that Schirmer "never denied or expressed doubt as to the existence of such an agreement" and indeed made "renewed promises to Chevron to perform [his] obligations under the agreement." Complaint ¶ 10. Schirmer argues that both sides benefitted by following through on the permit process after the option expired—Chevron because its interest in the property was conditioned on its being suitably zoned, and Schirmer because any such permits would be obtained in his name, thereby enhancing the value of the property to other potential buyers.

On March 11, 1988, Chevron delivered to an escrow agent what it considered to be sufficient funds to complete the transaction; some time prior to March 11, it had mailed to Broyles a copy of the option (unsigned), along with a copy of the instruction letter to the escrow agent, dated March 4. Schirmer refused to convey the property. On November 14, 1988, Chevron filed a diversity action in the District of Arizona seeking specific performance.

On July 26, 1989, Schirmer filed an amended answer and counterclaim alleging that, *inter alia*, the notice of lis pendens recorded by Chevron on the property when it filed its suit was (and was known by it to be) "groundless, improper and invalid." Schirm-

---

1. Schirmer is the successor in interest to Schirmer Properties by virtue of a property settlement agreement with his ex-wife (the other general partner in Schirmer Properties).

2. There is some dispute as to the option's expiration date. This dispute, however, is irrelevant, since there is no contention that Chevron exercised the option prior to November 21, 1987, the date it represents as the "more accurate[]" expiration date. Blue Brief at 9.

er asked for treble damages under Arizona Revised Statute § 33–420.

On March 6, 1990, the district court granted Schirmer's motion for summary judgment against Chevron on its complaint. The court subsequently permitted Chevron to amend its complaint to allege, *inter alia,* that in February 1988 it had entered into a new, oral agreement with Schirmer for the purchase of the property and that this oral agreement had been partially performed. On August 29, 1991, the court entered summary judgment against Chevron on its amended complaint, and summary judgment against Schirmer on his counterclaim.

## II. Analysis

### A. Chevron's Suit for Specific Performance

Chevron concedes that there is little or no dispute about the "objective events as to which the parties offered evidence." First Brief at 3. It argues, however, that the district court erred in resolving in Schirmer's favor the "substantial dispute as to what inferences should be drawn from these events." *Id.*

■ Our review of the trial court's summary judgment decision is de novo. *Jones v. Union P.R.R.,* 968 F.2d 937, 940 (9th Cir. 1992). We must ascertain, viewing the evidence in the light most favorable to Chevron (the nonmoving party), whether there are any genuine issues of *material* fact and whether the district court correctly applied the relevant substantive law. *FDIC v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir.1992). Only reasonable inferences that might be drawn from evidence in the record preclude summary judgment. *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1161 (9th Cir.1992); *Dorsey v. National Enquirer, Inc.,* 973 F.2d 1431, 1438 (9th Cir.1992).

■ There is no dispute that Chevron attempted to exercise the option at (in its words) "a time when according to its original written terms, it had expired." First Brief at 3. It contends, nonetheless, that because the parties' words and conduct both before and after the option expiration date were consistent with an inference that an agreement between them still existed, summary judgment in Schirmer's favor was inappropriate. This is contrary to Arizona law, which is "crystal clear that an option agreement must be strictly construed, in that it must be exercised in *exact accord* with its terms and conditions." *Rogers v. Jones,* 126 Ariz. 180, 182, 613 P.2d 844, 846 (Ct.App.1980) (emphasis added) (citing *Oberan v. Western Mach. Co.,* 65 Ariz. 103, 174 P.2d 745 (1946)).[3] Exact compliance with an option contract's terms is stringently enforced because an optionor like Schirmer is strictly bound to those terms, while an optionee like Chevron may freely accept or reject the terms as it chooses. *Id.*[4]

■ Here, Chevron did not comply with the option's terms and conditions. The district court correctly held that "[o]nce the option had expired, it could no longer be modified." Order of March 6, 1990, at 7. Chevron argues that it contacted Broyles shortly before the option expiration date, and discussed an extension (or extensions) with him. Chevron asserts that if the bottom line of its discussions with Broyles had been formalized, the result would have been a written extension of the option; absent the formality of actually memorializing this agreement and having both parties sign on, however, it argues that its version of a "hypothetical written agreement," Blue Brief at 12, should suffice to preclude summary judgment.

■ Whether there was a "hypothetical written agreement" to modify or extend the option period prior to its expiration is simply not material; the existence and terms of any

---

**3.** To the extent that Texas or Utah law may be different with respect to options, *see Broady v. Mitchell,* 572 S.W.2d 36, 40 (Tex.Ct.App.1978); *Coombs v. Ouzounian,* 24 Utah 2d 39, 465 P.2d 356, 358 (1970), Chevron offers no argument that Arizona would adopt such a posture and overturn its longstanding law.

**4.** *Purchase* contracts are treated differently than *option* contracts. *Compare, e.g., Kammert Bros. Enters., Inc. v. Tanque Verde Plaza Co.,* 102 Ariz. 301, 305, 428 P.2d 678, 682 (1967) (oral extension of time to make contract payments valid) *with, e.g., Rogers,* 126 Ariz. at 182, 613 P.2d at 846 (option contracts strictly construed).

oral agreement, whether or not the parties intended that it subsequently be reduced to writing, need not be submitted to the jury. Under Arizona law, because of the freedom of the optionee to walk away from the transaction, option agreements do not encompass oral agreements that, had they merely been written down, "would have" modified the option before it expired. *Cf. Rogers,* 126 Ariz. at 182, 613 P.2d at 846.

■ Chevron contends, alternatively, that the parties entered into a new option agreement after the expiration of the original option. Arizona's Statute of Frauds provisions require an option agreement for real property to be in writing. Ariz.Rev.Stat. Ann. § 44–101(6); *see also Bass Inv. Co. v. Banner Realty, Inc.,* 103 Ariz. 75, 79, 436 P.2d 894, 898 (1968). Chevron points to no writing that evidences a second option agreement. The December 23, 1988 letter from Schirmer to the bank holding his mortgage on the property is not, as Chevron characterizes it, a document "memorializ[ing] the parties' unwritten agreement." Blue Brief at 37. This letter stated only Schirmer's belief that "[t]he Chevron sale . . . is still available" as one way to raise money to pay his debt to the bank; it was not a confirmation, for purposes of the Statute of Frauds, that Schirmer had granted Chevron another option.

■ Neither of the two exceptions to the Statute of Frauds identified by Chevron applies in this case. One possibility argued by Chevron is waiver. At her deposition, Schirmer's ex-wife, Kandi Schirmer Kaufman (a partner in Schirmer Properties and one of the original defendants), related that it was her "understanding" that Schirmer "had simply verbally extended [the option] for—I don't know—several months. I don't know. Maybe—you know, it was—it wasn't anything like a year or anything like that. It was maybe three, four months, I don't remember what it was. I don't remember the specifics." Schirmer's Contradicting Statement of Facts, April 19, 1991, at 52. A party may not rely on a Statute of Frauds defense if it testifies to the terms of an oral agreement, but such testimony must be more specific than Kandi Schirmer Kaufman's indefi-

nite and inconclusive recitation of vague terms she believed someone else had agreed to. *See Anchorage–Hynning & Co. v. Moringiello,* 697 F.2d 356, 362–63 (D.C.Cir.1983) (Statute of Frauds defense barred when party deemed to have admitted to specific payment terms, delivery dates, and conditions of lease).

■ Chevron's second suggested exception, part performance, "is inapplicable in a suit where only money damages are sought." *Trollope v. Koerner,* 106 Ariz. 10, 17, 470 P.2d 91, 98 (1970); *William Henry Brophy College v. Tovar,* 127 Ariz. 191, 195, 619 P.2d 19, 23 (Ct.App.1980). Schirmer's bank foreclosed on the entire 37.8–acre tract and conducted a sheriff's sale, meaning, among other things, that specific performance is not an available form of relief. But even if Schirmer still owned the property, " 'part performance necessary to take an oral contract out of the statute of frauds must be unequivocably [sic] referable to the contract.' " *MH Inv. Co. v. Transamerica Title Ins. Co.,* 162 Ariz. 569, 574, 785 P.2d 89, 94 (Ct.App.1989) (quoting *Gene Hancock Constr. Co. v. Kempton & Snedigar Dairy,* 20 Ariz.App. 122, 125, 510 P.2d 752, 755 (Ct.App.1973)). Here, the district court ruled that the most likely explanation for the parties' conduct after the alleged February 1988 oral agreement was that it was "simply in line with the continuing negotiations." CR 296, at 8. That conduct was not unequivocally referable to the alleged contract—conduct that would *not* have been undertaken unless the option was in existence.

■ Chevron's amended complaint also contained various tort claims against Schirmer. The district court correctly found that these claims were predicated on a promise to agree in the future; Arizona law prohibits basing a misrepresentation claim on such a promise. *See Walters v. First Fed. Sav. & Loan Ass'n,* 131 Ariz. 321, 325, 641 P.2d 235, 239 (1982).

## B. Schirmer's Counterclaim

Pursuant to Arizona Revised Statute § 12–1191(A), Chevron recorded notice of lis pendens on November 14, 1988, effectively an-

nouncing that it had initiated legal action "affecting title to real property." The thrust of that part of Schirmer's counterclaim at issue on appeal is that Chevron recorded this notice of lis pendens knowing it to be "groundless." Such action would constitute a violation of Arizona Revised Statute § 33–420, which provides that

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded or filed in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording or filing, whichever is greater, and reasonable attorney fees and costs of the action.

Ariz.Rev.Stat.Ann. § 33–420(A).

The district court relied on *Evergreen West, Inc. v. Boyd,* 167 Ariz. 614, 810 P.2d 612 (Ct.App.1991), in holding that it was "not to conduct an inquiry into the merits" of Chevron's amended complaint (erroneously referred to as the *second* amended complaint). CR 296, at 20. Notwithstanding this interpretation of *Evergreen West,* the court found that because the amended complaint had "some basis," the notice of lis pendens "was not 'groundless,' as a matter of law." *Id.* Schirmer argues that granting summary judgment in favor of Chevron on his counterclaim is wrong for several reasons, including the court's decision to follow *Evergreen West* instead of *Coventry Homes, Inc. v. Scottscom Partnership,* 155 Ariz. 215, 745 P.2d 962 (Ct.App.1987). While we reject the contention that the two cases would lead to different results here, we accept Schirmer's argument that the district court's finding of "some basis" for Chevron's lis pendens was clearly erroneous.

In *Coventry Homes,* the Arizona Court of Appeals rejected the notion that judicial inquiry into the groundlessness of a lis pendens notice goes no further than a glance at the "action on its face" to see if the allegations, if true, have the potential to affect title to the property in question. *Id.* 155 Ariz. at 218, 745 P.2d at 965.

> [N]either the purposes of A.R.S. § 12–1191 nor A.R.S. § 33–420 would be served by permitting parties to record a notice of lis pendens to recover a debt merely by characterizing the action as one seeking a constructive trust or equitable lien. *There must be some basis* for concluding that an equitable lien or constructive trust would be imposed on the real property subject to the notice of lis pendens.

*Id.* (emphasis added). Applying this reasoning and going beyond "the action on its face," the court found that the lis pendens at issue was groundless, but that summary judgment was inappropriate because there were genuine issues of material fact as to whether the party who had recorded the notice of lis pendens had known or had reason to know that it was groundless. *Id.* 155 Ariz. at 219, 745 P.2d at 966.

The court in *Evergreen West* explicitly adopted the "some basis" test, 167 Ariz. at 620, 810 P.2d at 618, and added an alternative phrasing: a lis pendens is groundless "only where the claim that the underlying action is one affecting title to real property has no arguable basis or is not supported by any credible evidence." *Id.,* 167 Ariz. at 621, 810 P.2d at 619. Although the *Evergreen* court was at pains to reject the idea that *Coventry Homes* stood for the proposition that "the action under § 33–420 is ... intended to be an expedited hearing on the underlying action," it adopted *Coventry Home's* holding that "some examination of the merits of the case may be required." *Id.,* 167 Ariz. at 620, 810 P.2d at 618; *see Coventry Homes,* 155 Ariz. at 218, 745 P.2d at 965.

■ *Evergreen West* and *Coventry Homes* make it clear that under § 33–420, a notice of lis pendens will be found groundless unless there is some minimal, arguable basis for claiming that the underlying action will affect the real property at issue. Determining whether such basis exists will sometimes involve, as both cases note, looking beyond the pleadings. But by the same token, this threshold inquiry should not go so far as to attempt resolving the merits of the claims.

If there is an arguable basis for asserting that the underlying action will affect title to the property at issue—even if a court might find that the action ultimately fails on the merits—the notice of lis pendens is not groundless.

■ Applying this statement of the law to the facts before us, we must conclude that the district court erred in not finding that Chevron's notice of lis pendens was groundless. First, there is no dispute that Chevron knew its option contract with Schirmer had expired at the time it filed its complaint and notice of lis pendens. It also knew, or certainly should have known, that once the option contract expired, it could not be modified by Schirmer's oral representations or other conduct. Arizona law requires option contracts to be in writing, Ariz.Rev.Stat.Ann. § 44–101(6), and is "crystal clear" that they will be strictly construed. *Rogers,* 126 Ariz. at 182, 613 P.2d at 846. Under Arizona's Statute of Frauds, there is no plausible argument that Schirmer and Chevron entered into a new, oral option agreement. In sum, Chevron knew or should have known it had no "arguable basis" under Arizona law for asserting that its action for specific performance would affect Schirmer's property. Its notice of lis pendens was thus groundless under Arizona Revised Statute § 33–420.

### C. Schirmer's Attorneys' Fees Request

Schirmer requested attorneys' fees of $144,375.20 incurred in defeating Chevron's original and amended complaints. He based his request on three statutory provisions, Arizona Revised Statutes §§ 12–341.01(A), 12–341.01(C), and 12–349. Because we find the claim under section 12–341.01(A) dispositive, we do not analyze the other two sections.

■ Section 12–341.01(A) provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." We review a fee decision under this section for abuse of discretion. *Schwartz v. Farmers Ins. Co.,* 166 Ariz. 33, 38, 800 P.2d 20, 25 (Ct.App.1990).

The district court held that § 12–341.01(A) was applicable because both versions of Chevron's complaint "alleged the existence of contractual agreements." Order of Nov. 25, 1991, at 5. It denied Schirmer's request under this section, however, in light of its determination that "neither Chevron nor Schirmer [wa]s 'more successful' than the other party." *Id.* at 15.

■ It is well-settled Arizona law, however, that a defendant "is entitled to an award of its attorney's fees under § 12–341.01 if the plaintiff is not entitled to recover on the contract on which the action is based, or if the court finds that the contract on which the action is based does not exist." *Berthot v. Security Pac. Bank,* 170 Ariz. 318, 324, 823 P.2d 1326, 1332 (Ct.App.1991) (citing cases). Since Schirmer has prevailed, both on Chevron's contract claim and on his counterclaim, there is no doubt he is the "successful party" here, and entitled to reasonable attorneys' fees under section 12–341.01(A). We vacate and remand to the district court for the fee determination.

### D. Chevron's Attorney's Fees Request

Pursuant to § 12–341.01(A), Chevron requested some portion of the $680,622.00 it was billed for its attorneys' services. Chevron, not being the successful party, is not entitled to an award of attorneys' fees.

### III.

We affirm the summary judgment against Chevron and the denial of its fees request. We reverse the summary judgment entered against Schirmer on his counterclaim. We also reverse the denial of his fees request, and remand for a determination of reasonable fees.

AFFIRMED, in part, REVERSED in part and REMANDED.

REINHARDT, Circuit Judge, concurring and dissenting:

I agree with the majority opinion except for § II.B. In that section, the majority concludes that there is no "minimal, arguable basis" for claiming that Chevron's underlying action against Schirmer could have affected

the real property on which it filed a notice of lis pendens. *See* Maj. Op. at 1479–1480. Accordingly, it holds that Chevron's notice of lis pendens was "groundless" under Ariz.Rev. Stat. § 33–420. *See* Maj. Op. at 1479–1480. I respectfully disagree. In light of the record before us, I believe that there is *some* minimal, arguable basis that Chevron's underlying action could have affected the real property on which it filed a notice of lis pendens. Accordingly, I would find Chevron's notice of lis pendens *not* to be groundless, and I would affirm the district court on that issue.

In my opinion, the majority's otherwise fine analysis goes astray when it concludes that "[u]nder Arizona's Statute of Frauds, there is *no plausible argument* that Schirmer and Chevron entered into a new, oral option agreement." *Id.* (emphasis added). The record clearly shows that a *plausible* argument exists that Schirmer and Chevron entered into an enforceable oral agreement to extend the expiration date of the original option contract, notwithstanding the Arizona Statute of Frauds, Ariz.Rev.Stat. § 44–101(6).

Under Arizona law, an oral agreement can fall outside the scope of the statute of frauds under a theory of estoppel. "Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds." *Waugh v. Lennard,* 69 Ariz. 214, 222, 211 P.2d 806, 814 (1949). In my opinion, Chevron has adduced sufficient evidence to give rise to a plausible argument regarding a theory of estoppel.

There is evidence that Chevron "acted to [its] detriment solely in reliance on an oral agreement" and that Schirmer was therefore estopped from raising the statute of frauds. Chevron continued to make efforts to obtain a conditional use permit, health permits, and various other operating permits well after the original exercise date had expired and well after the time when Chevron contends it had entered into an alleged oral agreement to extend the option contract. *See* Chevron's Opening Brief, at 12–17.[1] After the time of the alleged oral agreement, Chevron incurred expenses in its efforts to obtain those permits and to close the deal. It incurred building, fire, health, grading, and other permit expenses exceeding $44,000.00. *See id.* at 17. It tied up over $725,000.00 in escrow. *See id.* at 21. Chevron might not have acted in this manner unless it believed that the option contract had been extended. Accordingly, Chevron can argue that it acted to its detriment solely in reliance on Schirmer's representations that the option agreement had been extended. *See id.*[2]

In sum, there *is* a "plausible" argument that Schirmer and Chevron entered into an enforceable oral agreement to extend the original option contract, notwithstanding the Arizona Statute of Frauds. Put differently, there is some "minimal, arguable basis" for claiming that Chevron's underlying action against Schirmer could have affected the real property on which it filed a notice of lis pendens. Accordingly, I believe that the majority errs in concluding that Chevron's notice of lis pendens was "groundless" under Ariz.Rev.Stat. § 33–420.

In all other respects, I generally agree with the majority opinion and the decisions it reaches. I should note, however, that, in view of my conclusion that Schirmer prevailed on the contract claim only, I would reach the same result the majority reaches as to attorney's fees by a somewhat different route.

---

1. The original exercise date expired on November 13, 1987. According to Chevron, the parties agreed to extend the option contract prior to November 13, 1987. *See id.* at 10–11. Chevron alleged that it relied on the extension agreement until at least March 11, 1988, when it delivered to an escrow agent sufficient funds to complete the transaction. *See generally* Chevron's Amended Complaint at 1–8.

2. The fact that under the original agreement Chevron could have exercised its option and then rescinded this action if it did not receive the permits does not affect my conclusion. The oral agreement allowed Chevron to seek the permits without committing itself to any firm contractual obligation. Moreover, even if the distinction is more legal than practical in this particular case, it is still sufficient to justify a finding of the requisite "minimal arguable basis."