785 P.2d 89

**MH INVESTMENT COMPANY, a partnership, and MGM Investment Company, a partnership; Condominium Con-**

sulting Services, Inc., an Arizona corporation, Plaintiffs/Counterdefendants/Appellees,

v.

TRANSAMERICA TITLE INSURANCE COMPANY, a California corporation, Defendant/Counterclaimant/Appellant,

Daniel S. Barton and Beverly A. Barton, husband and wife; Paul A. Petchel, an unmarried man; Steven J. Wentz and Geraldine E. Wentz, husband and wife; Eugene C. Woltz and Carole H. Woltz, husband and wife; Linda Lee Campbell, an unmarried woman; Richard Capozzi, an unmarried man; Lance J. Williams, an unmarried man; Amy I. Fetkavich, an unmarried woman; Richard B. Fairchild and Jane Doe Fairchild, husband and wife; Merri Suzanne Daugherty, an unmarried woman; Lonnie M. Wilbur and Jewel L. Wilbur, husband and wife; Hyman Brazlin and Dolores Brazlin, husband and wife; Lynne M. Dunne, an unmarried woman; Feliz Oleaga and Rosa Oleaga, husband and wife; Gary Aanenson, an unmarried man; Maria A. Hassing, an unmarried woman; Timothy S. Wald and Denise D. Wald, husband and wife; Joann W. Ferrell, an unmarried woman; Robert J. Pimsner, Jr., and Joann E. Pimsner, husband and wife; John R. Pimsner, an unmarried man; Sun State Savings and Loan Association, an Arizona corporation; the Arizona Bank; Fleet Mortgage Corporation; the Valley National Bank, a national banking association; Alliance Mortgage Company, Defendants/Appellants.

No. 2 CA–CV 89–0113.

Court of Appeals of Arizona,
Division 2, Department B.

Dec. 21, 1989.

Michael L. McAllister, Phoenix, for plaintiffs/counterdefendants/appellees.

Fennemore Craig by John G. Ryan, Timothy Berg and Diane M. Evans, Phoenix, for defendant/counterclaimant/appellant.

## OPINION

FERNANDEZ, Chief Judge.

Appellants Transamerica Title Insurance Company and the owners of 15 condominium units (collectively referred to as Transamerica) appeal from the granting of summary judgment against them in appellees' suit for foreclosure of two deeds of trust on the property. Appellants contend that factual issues exist on their affirmative defenses and counterclaims for promissory estoppel, equitable estoppel, fraud, and unjust enrichment that precluded entry of summary judgment. We agree in part.

In April 1983, a limited partnership named Points West Limited Partnership was created to develop a 108–unit condominium project known as Points West Condominium III. The general partner of Points West was Griffin & Associates, a general partnership comprised of Philip Reznik and Scott Griffin. The two limited partners of Points West were appellees MH Investment Company and MGM Investment Company. Both MH and MGM are themselves partnerships. Garry Shuster is a general partner in MGM and an agent with a power of attorney for MH.

In September 1983, Griffin and Reznik borrowed $3,380,000 from Sun State Savings and Loan Association and secured the loan with a first deed of trust on the property. In October 1984, they borrowed an additional $850,000 from Sun State and secured that loan with a second deed of trust on the property.

MH and MGM had contributed funds to Points West Limited Partnership that were to be returned to them with interest by late October 1983. Because that money was not repaid, MH and MGM entered into an agreement with Griffin, Reznik, and Points West on November 16, 1984. Pursuant to that agreement, Griffin and Reznik executed a promissory note for $142,772 in favor of MH and MGM. The note was secured by a third deed of trust on the property. The agreement provided that proceeds from unit sales would be applied first to the obligations owed to Sun State and then to MH and MGM's note. MH and MGM agreed to execute releases on the third deed of trust for units that were sold, provided that the proceed distribution scheme was recognized.

Also on November 16, 1984, Griffin and Reznik entered into an agreement with Condominium Consulting Services, Inc. (CCS), a corporation of which Shuster was president. That agreement called for CCS to consult and advise on completion of the project for a fee of $166,000, evidenced by a promissory note signed the same day and secured by a fourth deed of trust on the property. Payment on this note was to be made from proceeds of unit sales after payment to Sun State and to MH and MGM.

A month before the third and fourth trust deeds were executed, Griffin & Associates executed an irrevocable assignment of proceeds authorizing Transamerica Title Insurance Company, the escrow officer for sales of the condominiums, to pay all sales proceeds to Sun State.

A total of 39 units in the project were sold. The sales closed through Transamerica between November 19, 1984 and August 2, 1985. Shuster authorized releases as to the third and fourth trust deeds on 24 of the sales, and the trustee executed the releases. One release executed on Novemer 30, 1984 covered 14 sales that closed

between November 19 and December 18. The others were all executed individually on the date of closing. Shuster sent a letter to Transamerica dated May 13, 1986 in which he stated that Griffin and Reznik had defaulted on their November 1984 agreement with MGM and MH and that he would authorize no more releases until the defaults were corrected. Shuster submitted an affidavit with appellees' summary judgment motion in which he stated that the actual date of the letter was May 13, 1985.

Transamerica closed the sales of the 15 units at issue and issued title insurance on the properties. No releases were executed on the third and fourth deeds of trust. Because Sun State's first and second deeds of trust were released on those units, the third and fourth are now in first and second position. Griffin and Reznik defaulted on the promissory notes secured by those trust deeds, and MH, MGM, and CCS sued to foreclose on the trust deeds.

Transamerica answered and filed a counterclaim, contending that Shuster had executed escrow instructions on November 30, 1984 on behalf of all three entities that authorized Transamerica to obtain and record partial releases on the third and fourth deeds of trust on all units sold and that provided that no proceeds would be paid to appellees until a total of 90 units had been sold. Transamerica also contends that Shuster orally agreed to provide releases in accordance with the escrow instructions.

Appellees filed a summary judgment motion, arguing that they were entitled to judgment as a matter of law. Shuster submitted an affidavit in which he denied entering into an oral agreement or executing the escrow instructions. Appellees also submitted the affidavit of Jack Rudel, the trustee on the third and fourth deeds of trust and Shuster's attorney, in which he stated that Transamerica never requested that he execute releases on the 15 units. He also stated that two originals of the escrow instructions are in the safe at his office. The attached copies of the originals show that they were signed only by Griffin.

Griffin stated in an affidavit that he did not see Shuster sign the instructions at the time Griffin signed them. Appellees argued in the motion that any claimed oral agreement is barred by the statute of frauds.

Transamerica responded to the summary judgment motion and cited the deposition testimony of Phyllis Neal and the statement in the affidavit of James Harper, both Transamerica employees, that they witnessed both Shuster and Griffin execute five or six originals of the escrow instructions on November 30, 1984 and heard Shuster agree to provide partial releases until 90 units had been sold. Both Neal and Harper stated that the escrow instructions were prepared at the request of Griffin and Shuster. Harper testified that he took all the signed originals to Reznik's office for his signature. They were left at his office because he was not there at the time. Transamerica has only unsigned copies of the instructions in its possession.

The trial court granted summary judgment, stating that Transamerica was unable to demonstrate that it could refute Shuster's and Rudel's affidavits to the effect that Shuster never signed the instructions. Transamerica contends on appeal that the trial court improperly weighed the evidence in ruling on the motion and that fact issues exist on the question of Shuster's execution of escrow instructions. It also argues that, in any event, the statute of frauds does not bar proof of the oral agreement.

## IMPROPER WEIGHING OF EVIDENCE

Transamerica contends that the trial court made a finding of fact in its ruling on the summary judgment motion and thus impermissibly weighed the evidence, citing *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967). The alleged finding is the court's statement in its minute entry that Transamerica was unable to demonstrate that it could refute appellees' affidavits that Shuster did not sign the escrow instructions. Because of our conclusion that a factual question exists in this case, we need not address this contention.

## EXISTENCE OF FACT QUESTION ON EXECUTION OF ESCROW INSTRUCTIONS

■ Transamerica next argues that summary judgment was improperly entered because a fact question exists on the issue of whether Shuster ever executed the November 30, 1984 escrow instructions. Appellees argue that the testimony of Transamerica's employees that they saw Shuster sign the escrow instructions is inadmissible under the best evidence rule, Rule 1002, Ariz.R.Evid., 17A A.R.S., because not all the originals have been lost, citing Evidence Rule 1004(1). The best evidence rule pertains to proof of the contents of a document, however, and is inapplicable in this case. The contents of the instructions are not in dispute. The fact question that Transamerica is attempting to raise is instead whether Shuster ever executed the instructions.

■ Transamerica does not dispute Jack Rudel's affidavit that two of the originals are in his office safe. It also acknowledges that it does not have a copy of the instructions signed by Shuster. As Transamerica has pointed out, however, Rudel has only two of the original instructions in his safe. Transamerica's employees testified that there were five or six originals. The possibility exists, therefore, that some of the originals were signed by Shuster and then lost. One of Transamerica's employees contacted Reznik in an attempt to locate the lost documents and was told that Reznik could not recall what had happened to them.

It is inappropriate to grant summary judgment if there is any doubt as to whether a material fact issue exists. *Joseph v. Markovitz,* 27 Ariz.App. 122, 551 P.2d 571 (1976). That is also the case if there are conflicting inferences that can be drawn from the facts. *Northern Contracting Co. v. Allis–Chalmers Corp.,* 117 Ariz. 374, 573 P.2d 65 (1977). We agree that Transamerica has raised a material fact issue on the question of whether Shuster executed the escrow instructions and thus entered into a written agreement to release the third and fourth deeds of trust on the 15 units at issue. Because a material fact issue exists, we find that the trial court erroneously granted summary judgment.

Transamerica also argues that appellees are not entitled to summary judgment because of the existence of one or more affirmative defenses that show Shuster orally agreed to execute the releases of the two deeds of trust and that he breached that oral agreement. That oral agreement would be barred by the statute of frauds, A.R.S. § 44–101, unless Transamerica has raised a factual issue on any exceptions to the statute of frauds.

## EQUITABLE ESTOPPEL

■ Transamerica contends that appellees are estopped to deny that Shuster promised to provide deed releases. A party may be estopped to assert the bar of the statute of frauds if he has induced the other to change its position to its detriment in reliance on an oral agreement governed by the statute. *Gene Hancock Construction Co. v. Kempton & Snedigar Dairy,* 20 Ariz.App. 122, 510 P.2d 752 (1973). "[E]quitable estoppel refers to reliance on a representation of some present or past fact...." *Johnson v. Gilbert,* 127 Ariz. 410, 413, 621 P.2d 916, 919 (App.1980). The promises alleged by Transamerica to have been made by Shuster all relate to future acts—that Shuster would obtain releases on sales that closed in the future. Thus, equitable estoppel is not applicable here.

## PROMISSORY ESTOPPEL

■ Transamerica next argues that the alleged agreement is not barred by the statute of frauds because of promissory estoppel. That doctrine applies to a promise to do something in the future. *Johnson v. Gilbert, supra.* The defense is available, however, only when "there has been (1) a misrepresentation that the statute's requirements have been complied with, or (2) a promise to make a memorandum of the agreement." *Johnson,* 127 Ariz. at 414, 621 P.2d at 920. Neither has been

alleged here; thus, the doctrine does not apply.

## PART PERFORMANCE

■ Transamerica also argues that its partial performance of the agreement removes it from the statute of frauds. It contends that each time it closed escrow on one of the 15 units at issue and forwarded the sales proceeds to Sun State, it fulfilled its obligations under the agreement, leaving only appellees to perform by providing releases. The difficulty with its contention, however, is that "[p]art performance necessary to take an oral contract out of the statute of frauds must be unequivocably [sic] referable to the contract." *Gene Hancock Construction Co., supra,* 20 Ariz.App. at 125, 510 P.2d at 755. All of Transamerica's actions in closing the 15 sales are referable to the escrow instructions between Griffin & Associates and the condominium purchasers, as well as to the irrevocable assignment of proceeds between Griffin & Associates and Sun State. There is nothing whatsoever about Transamerica's performance in closing the escrows that is unequivocally referable to the alleged oral agreement between Transamerica and appellees.

## FRAUD

■ Next, Transamerica asserts that fraud by Shuster removes the oral agreement from the statute of frauds, noting the public policy that the statute of frauds should not be permitted to itself perpetrate fraud. *Trollope v. Koerner,* 106 Ariz. 10, 470 P.2d 91 (1970). A claim of fraud, however, does not lie for a promise to do something in the future. *Walters v. First Federal Savings & Loan Association,* 131 Ariz. 321, 641 P.2d 235 (1982). Moreover, we are unable to see how an entity such as a title company can seriously contend that it had a right to rely on an oral promise. We agree that Transamerica has not raised a factual issue as to the existence of all nine fraud elements. *McElwain v. Schuckert,* 13 Ariz.App. 468, 477 P.2d 754 (1970).

## UNJUST ENRICHMENT AND ERROR IN JUDGMENT AMOUNT

Because of our conclusion that the trial court should not have entered summary judgment on Transamerica's claim that Shuster breached the escrow instructions, we need not address its claim that appellees have been unjustly enriched by the entry of judgment in the amount of $308,-772, the full amount of the indebtedness secured by the third and fourth deeds of trust, although the sales proceeds from those units totalled only $110,933.43. We also do not address its contention that the trial court erred in awarding appellees the full amount of their original encumbrance.

The summary judgment is affirmed as to the affirmative defenses and causes of action in the counterclaim arising from the contention that an oral agreement was breached. It is reversed and the case is remanded for further proceedings on the issue of breach of a written agreement. Each party is to bear its own costs and attorney's fees on appeal.

LIVERMORE, P.J., and LACAGNINA, J., concur.