**ARNOLD & ASSOCIATES, INC., an Arizona corporation, Plaintiff,**

v.

**MISYS HEALTHCARE SYSTEMS, a division of Misys, PLC; Misys Physician Systems, LLC, a North Carolina corporation, Defendants.**

No. CIV–03–0287PHXROS.

United States District Court, D. Arizona.

Aug. 4, 2003.

Donald A Wall, Mitchell Wade Fleischmann, Squire Sanders & Dempsey LLP, Phoenix, AZ, for Plaintiff.

Wayne C Holcombe, Brian J Knipe, Klett Rooney Lieber & Schorling, Pittsburg, PA, for Defendants.

## ORDER

SILVER, District Judge.

This action arises out of a business dispute between Plaintiff Arnold & Associates, Inc. ("Plaintiff") and Defendant Misys Physician Systems, LLC ("Defendant").[1] Plaintiff asserts the existence of an oral contract obligating Defendant to retain Plaintiff as its insurance broker of record for a period of 18 months. When Defendant allegedly terminated the broker relationship prematurely, Plaintiff filed suit in Arizona state court seeking damages. Defendant removed to this Court on diversity and now moves to dismiss. For the reasons stated below, the Court will grant in part and deny in part Defendant's Motion to Dismiss.

## BACKGROUND

### A. Factual Background

The following facts from the Complaint (Doc. #1 at 9) are construed in a light most favorable to Plaintiff. Plaintiff is an Arizona corporation in the business of providing insurance brokerage services. Compl. ¶ 3. Defendant is a North Carolina based healthcare company with operations in Arizona. *Id.* In the fall of 2002, Defendant approached Plaintiff for help in obtaining more favorable insurance coverage. *Id.* ¶ 4. In exchange for Plaintiff's efforts, Defendant promised that it would retain Plaintiff as its broker of record with regard to a particular insurance program for a minimum of 18 months, commencing in November 2002. *Id.* The broker of record status entitled Plaintiff to receive commissions on the insurance arrangements it

---

1. Pursuant to Fed.R.Civ.P. 41(a), Plaintiff voluntarily dismissed their claim against Misys Healthcare Systems on June 16, 2003.

procured for Defendant. *Id.* ¶ 9. In addition, Defendant also promised that Plaintiff would remain as the broker of record for Defendant's Tucson, Arizona operation through at least the end of 2003. *Id.* ¶ 6. In return, Plaintiff would assist in the transition of certain insurance activities and services for Defendant's move from Arizona to North Carolina in 2004. *Id.* Plaintiff agreed to perform the services and ultimately saved Defendant $774,371.00 in medical and dental costs. *Id.* ¶ 5.

In reliance on Defendant's representations, Plaintiff expended substantial time, effort, and expense acquiring insurance services, including $19,500.00 in out-of-pocket costs. *Id.* ¶¶ 7–8. On December 31, 2002, four weeks after the broker relationship began, Defendant terminated Plaintiff as its broker of record. *Id.* ¶ 12. As a result, Plaintiff estimates a loss in insurance commissions of $200,000.00. *Id.* ¶ 11. Shortly thereafter, on January 1, 2003, Defendant appointed a new broker of record that is entitled to receive commissions on the insurance Plaintiff arranged for Defendant.[2] *Id.* ¶ 13.

**B. Procedural Background**

Plaintiff's Complaint (Ex. 1, Doc. # 1) seeks damages and was promptly removed to the United States District Court for the District of Arizona on February 13, 2003 (Doc. # 1).[3] Soon thereafter, on February 20, 2003, Defendant moved to dismiss under Fed.R.Civ.P. 12(b)(6) (Doc. # 6).

Plaintiff filed its Opposition (Doc. # 8) on March 10, 2003, to which Defendant replied on March 20, 2003 (Doc. # 9).

**DISCUSSION**

**A. Jurisdictional Basis**

Plaintiff is an Arizona corporation with its principal place of business in Arizona (Doc. # 1 at 2; Compl. ¶ 1). Defendant is a North Carolina limited liability company with its principal place of business in North Carolina (Doc. # 1 at 2; Compl. ¶ 2). Pursuant to 28 U.S.C. § 1332(c)(1), Plaintiff is a citizen of Arizona, and Defendant is a citizen of North Carolina. Plaintiff prays for relief substantially in excess of $75,000. Accordingly, this Court possesses diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Furthermore, the parties stipulate that Arizona substantive law applies (Doc. # 15, Doc. # 16).

**B. Legal Standard for a Rule 12(b)(6) Motion to Dismiss**

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *W. Mining Council v. Watt*, 643

---

**2.** According to Plaintiff, the insurance carrier "is obligated to pay [Defendant's] broker of record the commissions for such insurance for so long as that person is the broker of record for [Defendant] ... Said commissions are paid by the insurance carriers to the broker of record, regardless whether that broker of record had any role in procuring the insurance for [Defendant]." (Compl.¶ 9).

**3.** The Complaint originally named Misys Healthcare Systems and Misys Physician Sys-

tems, LLC as Defendants. However, documentation attached to the Notice of Removal (Ex. 1, Doc. # 1) only established service of process as to Misys Physician Systems, LLC. The Court issued an Order (Doc. # 11) on June 12, 2003 directing the parties to file supplemental briefings on service of process and failure to prosecute Misys Healthcare Systems. On June 16, 2003, Plaintiff voluntarily dismissed its claim against Misys Healthcare Systems under Fed.R.Civ.P. 41(a).

F.2d 618, 624 (9th Cir.1981). "The federal rules require only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting Fed.R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Indeed, though " 'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . . that is not the test.' " *Gilligan*, 108 F.3d at 249 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). " 'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Id.*

When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (citations omitted). The district court need not assume, however, that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998); *see Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649–50 (9th Cir.1984); *W. Mining Council*, 643 F.2d at 624.

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *see* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:187 at 9–46 (J. Silver contrib. ed.2002). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts."); *see also Federal Civil Procedure Before Trial* § 9:193 at 9–47.

## C. Analysis

Defendant moves for dismissal, pursuant to Fed.R.Civ.P. 12(b)(6), on each of Plaintiff's five counts: (1) breach of contract, (2) estoppel, (3) unjust enrichment, (4) breach of the implied covenant of good faith and fair dealing, and (5) fraud or negligent misrepresentation. For the reasons stated below, the Court will grant Defendant's Motion to Dismiss Counts One, Two, Four, and Five, leaving Count Three as Plaintiff's only remaining claim.

### 1. Count One—Breach of Contract

In Count One, Plaintiff alleges Defendant breached an oral agreement to retain Plaintiff as its insurance broker of record through, at least, April 2004 (Doc. # 1 at

12). Defendant argues that the Statute of Frauds bars enforcement of the alleged oral contract because it was incapable of performance within one year (Doc. # 6 at 5). The Court agrees with Defendant and will grant dismissal of Count One.

### a. The Statute of Frauds Bars Plaintiff's Contract Claim

The agreement at issue, formed in the fall of 2002, involves the following undisputed promises and performances alleged in the Complaint:

"4. As an inducement to [Plaintiff], to cause it to engage in substantial effort and activities and expense to obtain favorable insurance arrangements for [Defendant], [Defendant] represented and promised to [Plaintiff] in the fall of 2002 that [Defendant] would continue to retain [Plaintiff] as its insurance broker of record with regard to a certain insurance program for a minimum of 18 months, commencing in November 2002"

. . .

"6. As a further inducement to [Plaintiff] to undertake the substantial effort and expense of obtaining and putting in place insurance arrangements favorable to [Defendant] during a time when [Defendant] was considering movement of its management of certain insurance arrangements from Arizona to North Carolina, [Defendant] promised, represented to, and assured [Plaintiff] that [Plaintiff] would remain as the broker of record for the [Defendant] Tucson operation at least through the end of calendar year 2003. These representations and assurances were made specifically to cause [Plaintiff] to assist [Defendant] n the transition of certain activities from [Defendant's] Arizona operations to its North Carolina facility in 2004."

(Compl. ¶¶ 4, 6). .

█ Because this case involves an action based on an alleged oral agreement, the Court first looks to Arizona's Statute of Frauds which provides, in relevant part, that:

"No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

. . .

5. Upon an agreement which is not to be performed within one year from the making thereof."

A.R.S. § 44–101(5) (2003). Accordingly, because Defendant's promises extended approximately 18 months into the future, they fall squarely within the Statute of Frauds. *See Restatement (Second) of Contracts* § 130 cmt. b (1981) (explaining that a contract for a definite term cannot be deemed performable within one year, and therefore is within the Statute of Frauds); *see also* 4 *Corbin on Contracts* § 19.4 at 595–96 (rev. ed.1997) ("[i]f A promises to work for B, or B promises to employ A for more than one year, the promise is held to be within the Statute"). As such, the agreement between the parties is presumed to be unenforceable unless otherwise exempted from the Statute of Frauds. One such exception arises when the party seeking enforcement fully or partly performed its contractual duties. "If the plaintiff's part of the contract has been fully performed, the defendant's part becomes enforceable without regard to the period covered. If plaintiff has only partly performed, the part performance will in certain cases make the defendant's entire contract enforceable in equity." 4 *Corbin on Contracts* § 19.1 at 578–579 (rev. ed.1997).

### b. The Full Performance Doctrine

█ Arizona courts generally recognize that complete performance by a party to

an oral contract for services, not to be performed within one year, removes the contract from the operation of the Statute of Frauds. *Diamond v. Jacquith,* 14 Ariz. 119, 123, 125 P. 712, 714 (1912); W.R. Habeeb, Annotation, *Performance as Taking Contract Not to be Performed Within a Year Out of the Statute of Frauds,* 6 A.L.R.2d 1053 (1949).[4] In doing so, full performance renders the defendant's promise enforceable without regard to the time necessary for its complete performance. 4 *Corbin on Contracts* § 19.14 at 619 (rev. ed.1997) (citing *Diamond,* 14, Ariz. 119, 14 Ariz. 119, 125 P. 712). The theory underlying this exception is that the "purpose of the Statute is to prevent fraud[.] ... [I]t was not intended to be a cloak for fraud or a means of perpetrating fraud." 10 *Williston on Contracts* § 27:19 at 193 (4th ed.2002).

### i. Plaintiff Fails to Establish Full Performance

Plaintiff argues that it "fully performed its obligations under the contract by obtaining favorable insurance arrangements

4. The weight of Arizona authority clearly lends itself to the conclusion that the doctrine of full performance is a defense to the Statute of Frauds: *In re Estate of MacDonald,* 4 Ariz. App. 94, 99, 417 P.2d 728, 733 (1966); *Cavanagh v. Kelly,* 80 Ariz. 361, 364, 297 P.2d 1102, 1104 (1956); *Wilson v. Metheny,* 72 Ariz. 339, 344, 236 P.2d 34, 37 (1951); *Condon v. Ariz. Housing Corp.,* 63 Ariz. 125, 132–33, 160 P.2d 342, 345–46 (1945); *Waddell v. White,* 51 Ariz. 526, 539–40, 78 P.2d 490, 496 (1938); *Norton v. Steinfeld,* 36 Ariz. 536, 548, 288 P. 3, 7 (1930).

5. It is particularly confusing because nowhere in Plaintiff's Complaint or Opposition Brief does it contend that two contracts existed. Plaintiff raised the notion of a two contract theory for the first time at oral argument.

for [Defendant]—saving [Defendant] $774,371 in medical and dental insurance costs." (Doc. # 8 at 4). Plaintiff presents this argument in a confusing pair of theories regarding whether one or two contracts existed between the parties.[5] Neither theory, however, is sufficient to take the alleged agreement out of the Statute.

■ If the Court views the promises as parts of a single contract, then the allegation requiring Plaintiff to "assist [Defendant] in the transition of certain activities from [Defendant's] Arizona operations to its North Carolina facility in 2004" (Compl.¶ 6) directly contradicts full performance. Therefore, even if Plaintiff satisfied its duties to arrange favorable insurance for Defendant, Plaintiff still had ongoing contractual obligations that it never completed prior to its termination in December 2002. *See Waddell v. White,* 51 Ariz. 526, 78 P.2d 490 (1938) (in an action on the contract, full performance is not available to a plaintiff when the contract is terminated before either party fully performed its obligations).

If the Court accepts that each promise evinces a separate contract,[6] then Plaintiff

6. The Court can find no way to read the Complaint as pleading two contracts. Defendant made the second promise as "a further inducement" to Plaintiff (Compl.¶ 6). The common definition of "further" is "additional" as opposed to "separate" or "independent." Next, Plaintiff groups the two promises together and refers to them generally as "promises, representations, and assurances" throughout the Complaint (Compl.¶¶ 8, 10, 12, 16, 20–23). Finally, Plaintiff brings an action for breach of a single "binding oral contract," (Compl.¶ 16), for restitution of "the benefit of [Plaintiff's] bargain," (Compl.¶ 33), and for misrepresentations of the "agreement." (Compl.¶ 37).

concedes that the Statute of Frauds bars an action on the alleged second agreement to "assist [Defendant] in the transition of certain activities from [Defendant's] Arizona operations to its North Carolina facility in 2004" (Compl.¶ 6) because Defendant terminated Plaintiff in 2002 (Tr. at 32). Yet, even interpreting the facts in a light most favorable to Plaintiff, the Court finds no way to establish full performance on the purported first contract "to obtain favorable insurance arrangements for [Defendant]." (Compl.¶ 4).

Plaintiff unconvincingly argues that ¶ 5 of the Complaint alleges full performance by stating that Plaintiff "directly brought about a medical and dental cost savings to [Defendant] of approximately $774,371" and that "there was nothing more for the Plaintiff to do." (Tr. at 23). Although the Court must construe all material allegations in the light most favorable to Plaintiff, the Court must also accept as true all *reasonable inferences* drawn from them. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). Among those reasonable inferences is that, as a broker, Plaintiff had continuing obligations to perform under the agreement. Therefore, the Court is willing to accept Defendant's contention that Plaintiff's contractual duties included "acting as the interface between Defendant and its health insurers, answering the Defendant's questions about policy terms and coverage, and assisting with claims payment and claims disputes." (Doc. # 9 at 3). It becomes unreasonable, as a result, to infer that an agreement spanning 18 months could be fully performed after only four weeks. *See Trollope v. Koerner*, 106 Ariz. 10, 17, 470 P.2d 91, 98 (1970) (it is a fundamental notion that "one cannot claim full performance of a contract, such as a lease, which would be, if performed, concededly [be] executory on both sides"); *see also In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir.1996) (unwarranted inferences are not sufficient to defeat a motion to dismiss). Nonetheless, Plaintiff would have the Court discount its ongoing responsibilities as an insurance broker in order to find full performance prior to its termination by Defendant. In doing so, Plaintiff misplaces its reliance on *Condon v. Arizona Housing Corp.*, 63 Ariz. 125, 160 P.2d 342 (1945).

In *Condon*, defendant corporation and plaintiff buyers entered into an agreement under which the plaintiffs would buy a lot and a house from defendant. Plaintiffs made all preliminary payments under the agreement, took possession of the property, and made improvements. However, before plaintiffs made the final payments, defendant conveyed the property to a third party. In holding that the Statute of Frauds did not support defendant's motion to dismiss, the Arizona Supreme Court stated, in dicta:

> "we view the facts as set out in the plaintiff's complaint as more than part performance. It would seem to us the plaintiffs fully performed or at least made a tender of full performance within the alleged agreement. They specifically alleged they not only entered into possession, but also made payments as required, and were prevented from making the final payments by the refusal of defendant to complete the transaction."

*Condon*, 63 Ariz. at 132, 160 P.2d at 345. However, the court supported its decision under the doctrine of part performance in granting plaintiff the equitable remedy of specific performance. Here, however, part performance is inapplicable because Plaintiff does not seek equitable remedies such as recission or specific performance, but rather maintains an action at law for damages (Compl. "Wherefore" clause ¶¶ 1–2). *See Johnson v. Gilbert*, 127 Ariz. 410, 413, 621 P.2d 916, 919 (1980) ("part performance does not apply where money damages are sought"); *see also Evans v. Mason*, 82

Ariz. 40, 44, 308 P.2d 245, 248 (1957) ("the doctrine of part performance is purely an equitable doctrine, and is not available to sustain an action at law on a contract within the statute of frauds") Accordingly, *Condon* is distinguishable and does not support Plaintiff's claim of full performance.

### 2. Count Two—Estoppel

Next, Plaintiff alleges it expended substantial resources in reliance on Defendant's promises. As such, Plaintiff argues Defendant should be estopped from denying its obligations to retain Plaintiff as the broker of record (Doc. # 1 at 4–5). Defendant counters that the Statute of Frauds bars Plaintiff's estoppel claim (Doc. # 9 at 6). The Court finds Plaintiff's estoppel argument fails and will grant Defendant's Motion to Dismiss Count Two.

#### a. Statute of Frauds and Estoppel

■ "A party may be estopped to assert the bar of the statute of frauds if he has induced the other to change its position to its detriment in reliance on an oral agreement governed by the statute." *MH Investment Co. v. Transamerica Title Ins. Co.*, 162 Ariz. 569, 573, 785 P.2d 89, 93 (App.1989); *Gene Hancock Constr. Co. v. Kempton & Snedigar Dairy*, 20 Ariz.App. 122, 125, 510 P.2d 752, 755 (1973). Here, Plaintiff attempts to defend itself from the Statute of Frauds by asserting the doctrines of equitable and promissory estoppel (Doc. # 8 at 6).[7]

#### i. Equitable Estoppel

■ "Equitable estoppel involves, generally speaking, an affirmative misrep-resentation of a present fact or state of facts and detrimental reliance by another thereon." *Tiffany, Inc. v. W.M.K. Transit Mix, Inc.*, 16 Ariz.App. 415, 419, 493 P.2d 1220, 1224 (1972); *Trollope v. Koerner*, 106 Ariz. 10, 17, 470 P.2d 91, 99 (1970). However, "equitable estoppel is a shield, not a sword; that is, it is available only as a defense by the party who has relied when the misrepresenting party seeks to enforce some claim against him. It is not a basis for a cause of action for damages against the misrepresenting party." *Tiffany, Inc.*, 16 Ariz.App., 415, 419, 493 P.2d 1220, 1224 (quoting 2 Okla. L.Rev. 89 (1969)).

■ In this case, Plaintiff does not assert a misrepresentation of a present fact in its Complaint. Instead, the promises attributed to Defendant all relate to future acts—that Defendant would retain Plaintiff as its broker of record, entitling it to commissions from the insurance company during that time (*see supra* at 1020). Furthermore, Plaintiff asserts that estoppel applies only as a cause of action for damages to recover "the anticipated commissions through April 2004, the value of the time and energy devoted to procuring insurance, and the amount of money spent in connection with [its] work." (Compl.¶ 24). Thus, equitable estoppel is not applicable, and the Court grants Defendant's Motion to Dismiss Count Two.

#### ii. Promissory Estoppel

■ "Promissory estoppel, on the other hand, generally does not involve a misrepresentation but a promise by one party upon which another relies to his detriment and which the promisor should

---

7. In its Opposition Brief, Plaintiff argued that its "Complaint is not limited to promissory estoppel, but includes equitable estoppel" as well (Doc. # 8 at 6). At oral arguments, however, Plaintiff restricted its claim to equitable estoppel:

Q: "So you're not relying on promissory estoppel; you're relying on equitable estoppel?"
A: "Yes, your Honor."
(Tr. at 45–46). For the sake of completeness, the Court will briefly discuss promissory estoppel.

reasonably have foreseen would cause the promisee to so rely." *Tiffany, Inc.,* 16 Ariz.App., 415, 419, 493 P.2d 1220, 1224; *accord Restatement (Second) of Contracts* § 90 (1981). It operates not in regard to a past or presently existing state of facts, but rather to a situation which one party promises will be true in the future. *Waugh v. Lennard,* 69 Ariz. 214, 224, 211 P.2d 806, 812 (1949). Therefore, promissory estoppel may be used as both a sword and a shield, and subsequently may give rise to a cause of action for damages. *Tiffany, Inc.,* 16 Ariz.App. 415, 419, 493 P.2d 1220, 1224.

 The Complaint alleges that Defendant made promises to retain Plaintiff as its broker of record. (*see supra* at 1020). In reliance on the promises, Plaintiff expended "considerable time, effort and expense" performing its obligations, including "$19,500 in out-of-pocket expenses." (Compl.¶¶ 4, 7–8). It is also reasonable to infer that Defendant should have foreseen Plaintiff's reliance as these parties engaged in similar transactions since 1996.[8]

 However, because the Statute applies to the agreement in this case (*see supra* at 1020–1022), Arizona law precludes the defense of the Statute of Frauds only when there has been: (1) a misrepresentation that the Statute of Frauds's requirements have been met, or (2) a promise to put the agreement in writing. *Mullins v. So. Pac. Trans. Co.,* 174 Ariz. 540, 542, 851 P.2d 839 (App. 1992); *MH Investment Co. v. Transamerica Title Ins. Co.,* 162 Ariz. 569, 573, 785 P.2d 89, 93 (App.1989); *Johnson v. Gilbert,* 127 Ariz. 410, 413, 621 P.2d 916, 919 (App.1980); *Tiffany, Inc.,* 16 Ariz.App. 415, 421, 493 P.2d 1220, 1226 (1972); *see also* 3 *Corbin on Contracts* § 8.12 at 70 (rev. ed.1997) ("[t]he Grand Canyon State's

reservation about applying the promissory estoppel doctrine too liberally can also be seen regarding the statute of frauds. Before promissory estoppel can ... vitiate the statute of frauds, Arizona courts circumspectly require reliance upon a second promise"). However, Plaintiff does not allege that Defendant made such a second promise.

### 3. Count Three—Unjust Enrichment

In Count Three of the Complaint, Plaintiff argues Defendant was unjustly enriched by retaining the benefit of Plaintiff's time, energy, and costs in arranging insurance without paying for it (Doc. # 1 at 13–14). Defendant contends that there is no unjust enrichment when the recipient pays consideration for the benefit received (Doc. # 6 at 6–7, Doc. # 9 at 4–5). The Court finds Plaintiff sufficiently pled the elements of unjust enrichment and will deny Defendant's Motion to Dismiss as to this Count.

### a. Unjust Enrichment

 The doctrine of unjust enrichment is a "flexible, equitable remedy available whenever the court finds that 'the defendant ... is obliged by the ties of natural justice and equity' to make compensation for the benefits received." *Murdock–Bryant Const., Inc. v. Pearson,* 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985). Particularly, "[w]hen the plaintiff has conferred a benefit upon the defendant in reliance upon an agreement which is unenforceable under the statute of frauds, the plaintiff is entitled to restitution of the benefit conferred to prevent unjust enrichment of the defendant at the plaintiff's expense." Dan B. Dobbs, *Law of Remedies* § 13.2(2) at 519 (2d ed.1993); *see e.g.*

---

**8.** The Complaint alleges Defendant "would *continue* to retain [Plaintiff] as its insurance broker of record." (Compl.¶ 4) (emphasis added), implying that Defendant was aware that Plaintiff would continue to perform as it had in the past.

*Trollope v. Koerner*, 106 Ariz. 10, 470 P.2d 91 (1970).

■ In order to establish a claim for unjust enrichment, a plaintiff must show that, (1) it conferred a benefit upon defendant, (2) defendant's benefit is at plaintiff's expense, and (3) it would be unjust to allow defendant to keep the benefit. *Murdock–Bryant Const., Inc.*, 146 Ariz. at 53, 703 P.2d at 1202; *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352, 661 P.2d 196, 202 (App.1982); *Restatement of Restitution* § 1 cmt. a (1937). However, the mere receipt of a benefit is insufficient. *Pyeatte*, 135 Ariz. at 353, 661 P.2d at 196; *Restatement of Restitution* § 1 cmt. c (1937). Rather, retention of the benefit without compensation must be unjust. *Pyeatte*, 135 Ariz. at 353, 661 P.2d at 196.

■ Plaintiff's Complaint contains sufficient allegations to show that unjust enrichment is an appropriate claim in this case. First, accepting all allegations of material fact as true, Plaintiff conferred a benefit upon Defendant of $774,371.00 in medical and dental insurance savings. *See Restatement of Restitution* § 1 cmt. b (1937) (a plaintiff confers a benefit "where [it] saves the other from expense or loss"). Next, any benefit conferred is at Plaintiff's expense, which includes $19,500.00 in out-of-pocket costs, and potential opportunities for other, paying, clients during the period in question.

■ Finally, Plaintiff correctly claims it would be "unfair, unjust, and inequitable" for Defendant to keep the benefit of its services without compensation (Compl. ¶ 28). In order to determine that retention of a benefit is unjust, a plaintiff must show that "it was not intended or expected that the services be rendered or the benefits conferred gratuitously, and that the benefit was not conferred officiously." *Pyeatte*, 135 Ariz. at 353, 661 P.2d at 203; *accord Restatement of Restitution* § 2 (1937). Here, Plaintiff stood to receive approximately $200,000.00 in commissions on the insurance it arranged for Defendant. Therefore, it is reasonable that Plaintiff did not render its services gratuitously or officiously, but rather pursuant to a contract or agreement with the expectation of receiving commissions as the broker of record. *See Pyeatte*, 135 Ariz. at 353, 661 P.2d at 203 (in the absence of an enforceable contract, an agreement provides strong evidence of plaintiff's expectation of compensation).

Thus, Plaintiff successfully pled the requisite elements of unjust enrichment, and the Court will deny Defendant's Motion to Dismiss Count Three.

### b. Third Party Consideration

Defendant asserts that payment of consideration to another, in the form of premiums to the insurance company, precludes Plaintiff's unjust enrichment claim (Doc. # 6 at 7). The Court disagrees.

Defendant mistakenly relies on *Advance Leasing & Crane Co. v. Del E. Webb Corp.*, 117 Ariz. 451, 573 P.2d 525 (App.1977), in support of its position. In *Advance*, Webb, a general contractor, entered into an agreement with Meyers, an equipment rental firm, to lease cranes for a construction project. At one point, Webb required a larger crane than Meyers had in stock. Meyers leased a more expensive crane from Advance and provided it for Webb's use at the original contract rate, agreeing to absorb any loss in the transaction. Webb paid Meyers the contract price. Meyers, however, did not pay Advance, who then sued Webb for unjust enrichment. The Arizona Court of Appeals held the doctrine of quantum meruit was not applicable. The court reasoned that a party who has conferred a benefit upon another as the performance of a contract with a third party is not entitled to restitution

from the other merely because of the failure of performance by the third party.

The facts in this case are readily distinguishable from those in *Advance* and therefore do not support dismissal of Plaintiff's claim. Like *Advance,* this case involves three parties—Plaintiff, Defendant, and an insurance carrier. More importantly, unlike *Advance,* where there was no agreement between plaintiff, the party claiming relief, and defendant, the purported enriched party, in this case there exists an alleged express agreement between Plaintiff and Defendant. Advance could not rely on a restitutionary remedy because the lack of an agreement left Advance to assume the risk that Meyers would make sufficient profit on the contract with Webb to pay Advance for the crane rental. Here, however, restitution is available, particularly because of the alleged oral agreement. *See Restatement of Restitution* § 40 cmt. c (1937) (when an agreement "is not enforceable as a contract, ... restitution for what has been performed is required to prevent unjust enrichment"). Accordingly, *Advance* is distinguishable and cannot support dismissal of Plaintiff's unjust enrichment claim.

### 4. Count Four—Breach of Implied Covenant of Good Faith & Fair Dealing

Plaintiff also contends that Defendant breached the implied covenant of good faith and fair dealing when it terminated the broker relationship (Doc. # 1 at 14). Defendant asserts the lack of an enforceable contract precludes Plaintiff's claim (Doc. # 6 at 10–11, Doc. # 9 at 4). The Court will grant dismissal of Count Four after failing to find a sufficiently alleged oral contract (*see supra* at 1020–1022).

■ Every contract under Arizona law incorporates the implied covenant of good faith and fair dealing. *Rawlings v.*

*Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). Such implied terms are as much a part of the contract as the express terms. *Golder v. Crain,* 7 Ariz.App. 207, 210, 437 P.2d 959, 961 (1968). The covenant prohibits a party from doing anything to prevent the other party to the contract from receiving the benefits of the agreement. *Rawlings,* 151 Ariz. at 153–54, 726 P.2d at 569–70. Breach of this covenant, therefore, may give rise to a claim for damages in an action on the contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 491, 38 P.3d 12, 29 (2002); *Burkons v. Ticor Title Ins. Co.,* 168 Ariz. 345, 355, 813 P.2d 710, 720 (1991). Most importantly, however, the obligation imposed by the covenant *presumes* the existence of a valid contract. *Rawlings,* 151 Ariz. at 153–54, 726 P.2d at 569–70.

■ In this case, the Court found that the Statute of Frauds rendered Plaintiff's contract claim unenforceable (*see supra* at 1020–1022). Accordingly, the Court grants Defendant's Motion to Dismiss the related claim of breach of the implied covenant of good faith and fair dealing. *See Johnson Int'l, Inc. v. City of Phoenix Parks & Recreation Board,* 192 Ariz. 466, 967 P.2d 607, 615 (App.1998) (in the absence of an enforceable contract between the parties, the implied obligations of the covenant of good faith and fair dealing never arise).

### 5. Count Five—Fraud & Negligent Misrepresentation

In Count Five, Plaintiff claims that Defendant is liable for fraud or negligent misrepresentations (Doc. # 1 at 15). Defendant moves for dismissal on the grounds that Plaintiff does not comport with the heightened pleading requirements for fraud (Doc. # 6 at 11–12, Doc. # 9 at

8). The Court will dismiss Count Five because Plaintiff does not plead the elements or particular circumstances of fraud, and fails to sufficiently allege negligent misrepresentation.

### a. The Elements of Fraud

 In order to maintain an action for fraud under Arizona law, a plaintiff must sufficiently plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury. *Nielson v. Flashberg,* 101 Ariz. 335, 338–39, 419 P.2d 514, 517–18 (1966) (in division); *Moore v. Meyers,* 31 Ariz. 347, 354, 253 P. 626, 627 (1927) (different result reached on rehearing). In order to determine whether the elements are present, a court looks to the face of the complaint. *Stewart v. Phoenix Nat'l Bank,* 49 Ariz. 34, 41, 64 P.2d 101, 105 (1937); *see also Spudnuts, Inc. v. Lane,* 131 Ariz. 424, 426, 641 P.2d 912, 914 (App.1982) ("[a]lthough no particular language is necessary in pleading fraud, the elements constituting fraud must be found when considering the pleading as a whole").

### b. Plaintiff Fails to Plead the Elements of Fraud

On the face of the Complaint, Plaintiff did not plead fraud in accordance with Arizona law. The Complaint contains allegations that Defendant made (1) a representation (Compl.¶ 4, 6); (2) that the representation was false (Compl.¶ 12); (3) that the representation was material (Compl.¶¶ 7–10); (4) that Defendant knew it was false (Compl.¶ 37); (5) that Defendant intended Plaintiff to act on it (Compl. ¶¶ 4, 6, 37); (6) that Plaintiff did not know

it was false (Compl.¶¶ 10, 37); (7) that Plaintiff relied on the representation (Compl.¶¶ 7, 8, 11); and (8) that Plaintiff suffered injury as a result of its reliance (Compl.¶¶ 7, 8, 11).

 The Complaint, however, lacks a sufficient allegation that Plaintiff had a justifiable right to rely on the representations made by Defendant. "In order that a representation constitute actionable fraud, it must relate to either a past or existing fact. It cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events unless such were made with the present intention not to perform." *Staheli v. Kauffman,* 122 Ariz. 380, 384, 595 P.2d 172, 175 (1979) (in division). The underlying policy is that "a promise to perform in the future is not a representation which can be shown to be true or false at the time it was made, and therefore, a person has no right to rely, in a legal sense, on a representation of a fact not in existence." *Denbo v. Badger,* 18 Ariz.App. 426, 428, 503 P.2d 384, 386 (1972). In this case, the only averment that Defendant intended not to perform at the time it made the statements alleged by Plaintiff is that it subsequently failed to perform. However, "a breach of contract is not fraud." *Trollope v. Koerner,* 106 Ariz. 10, 19, 470 P.2d 91, 100 (1970). Even if Plaintiff could make a good faith allegation of intent:

> "[s]ince the provision in the statute [of Frauds] prohibiting any action to be brought on an oral contract within the statute includes actions based indirectly on the contract, 'an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it.'"

*Lininger v. Sonenblick,* 23 Ariz.App. 266, 269, 532 P.2d 538, 541 (1975) (quoting *Ca-*

*nell v. Arcola Hous. Corp.*, 65 So.2d 849, 851 (Fla.1953)). As one of the nine essential elements of fraud, the absence in the Complaint of any allegations of a justifiable right to rely is fatal to Plaintiff's claim. Accordingly, the Court will grant dismissal of Count Five as it relates to fraud.

## C. Legal Standard For Rule 9(B) Heightened Pleading Requirements

■■■■ Under Fed.R.Civ.P. 8(e), a pleading need only be "simple, concise, and direct" in stating a claim for relief. However, when alleging fraud or misrepresentation, Rule 9(b) provides an exception to Rule 8's liberal requirements that parties only make short and plain statements of their claims. *Wyatt v. Terhune*, 315 F.3d 1108, 1118 (9th Cir.2003); *Brazee v. Morris*, 65 Ariz. 291, 292, 179 P.2d 442, 443 (1947). Accordingly, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).[9] "While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.2003) (emphasis in original). To satisfy the particularity of circumstances, statements of the time, place, and nature of the alleged fraudulent activities are sufficient, while mere conclusory allegations of fraud are

not. *Id.* at 1107; *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973). Such averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997); William W. Schwarzer, *Federal Civil Procedure Before Trial* § 8:43–44 at 8–15 (J. Silver contrib. ed.2002). Furthermore, "a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Secur. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994); *Federal Civil Procedure Before Trial* § 8:44 at 8–15. Nevertheless, Rule 9(b)'s particularity requirement must be read in harmony with Rule 8's mandate of a short and plain statement of the claim. *Federal Civil Procedure Before Trial* § 8:39 at 8–13. Therefore the allegations should be specific enough to eliminate surprise by giving defendants notice of the particular misconduct with which they are charged so they can defend against it and not simply deny they have done anything wrong. *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir.2001); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993).

## d. Plaintiff Did Not Plead Fraud with Particularity under Rule 9(b)

■■■ Assuming the Complaint contains a concurrence of the nine elements of fraud, Plaintiff fails to satisfy the more stringent federal requirements of Rule 9(b).[10] Plaintiff does not specify the identities of the individual speakers, relying

**9.** The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**10.** The Court notes that Plaintiff's fraud claim also fails under the particularity requirement

of Ariz. R. Civ. P. 9(b), which is identical to Fed.R.Civ.P. 9(b). "The federal rule ... is identical to [Arizona's]. Because Arizona has substantially adopted the Federal Rules of Civil Procedure, [Arizona courts] give great weight to the federal interpretation of the rules." *Anserv Ins. Servs., Inc. v. Albrecht,* 192 Ariz. 48, 960 P.2d 1159, 1160 (1998).

instead on general allegations that "Misys represented and promised to Arnold ... that Misys would continue to retain Arnold as its insurance broker of record." (Compl.¶¶ 4, 6). Additionally, Plaintiff does not specify a particular date or time, but instead broadly states that Defendant made the alleged representations "[i]n the fall of 2002." (Compl.¶ 4). Nor does Plaintiff provide information regarding where Defendant made its representations or under what circumstances. Finally, short of stating "[Defendant] knowingly made false statements ... or omitted material information which [Defendant] had a duty to disclose in eight of the statements [Defendant] did make," Plaintiff completely fails to allege the specific content of the statements or what was false about them (Compl.¶ 37). Accordingly, dismissal is also appropriate because of Plaintiff's failure to state the circumstances with particularity as required by the Federal Rules.

### e. Negligent Misrepresentation

■■■■ Negligent misrepresentation is a separate tort from that of fraud. *Pettay v. Ins. Mktg. Servs.*, 156 Ariz. 365, 368, 752 P.2d 18, 21 (App.1987); W. Prosser & W. Keeton, *The Law of Torts* § 105 at 727, § 107 at 740 (5th ed.1984). It "is committed by the giving of false information intended for the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information." *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987); *accord Restatement (Second) of Torts* § 552(1) (1977). Because it is governed by the principles of negligence, there must be "a duty owed and a breach of that duty

before one may be charged with the negligent violation of that duty." *West v. Soto*, 85 Ariz. 255, 261, 336 P.2d 153, 156 (1959). However, negligent misrepresentation requires "a misrepresentation or omission of a *fact*. A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation." *McAlister v. Citibank (Ariz.)*, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (App.1992) (emphasis in original).

■■■■ The alleged misrepresentations in this case involve promises concerning future events (*see supra* at 1020). *See e.g. McAlister*, 171 Ariz. at 215, 829 P.2d at 1261 (affirming dismissal when defendant's promises all relate to future conduct). As such, Plaintiff's negligent misrepresentation claim is insufficient to survive dismissal. To hold otherwise would require turning a promise to perform into a statement of fact so that failure to perform automatically becomes a misrepresentation, in which case any negligent breach of contract would subject the breaching party to liability in tort.

### 6. Alternative Pleadings

■■■■ Alternatively, Defendant attacks Counts Two (estoppel), Three (unjust enrichment), and Four (breach of implied covenant of good faith and fair dealing) on procedural grounds, arguing that dismissal is appropriate because "Plaintiff does not plead these claims in the alternative." (Doc. # 6 at 7). Despite Defendant's contentions, however, Plaintiff is correct in noting that there are no requirements to include the magic words "in the alternative" in making alternative claims. The Court previously determined that Counts Two and Four are insufficient to withstand the Motion to Dismiss and will not be analyzed (*see supra* at 1023–1024, 15).[11]

---

11. If the Court were to analyze Defendant's arguments as to Counts Two and Four, those arguments would not support dismissal. Under the Federal Rules, a plaintiff may set forth inconsistent legal theories in its pleadings and will not be forced to elect a single theory on

Dismissal of Count Three, however, is inappropriate.

#### a. Legal Standard for Pleadings under Fed.R.Civ.P. 8(e)

Under the Federal Rules, pleadings "shall be simple, concise, and direct." Fed.R.Civ.P. 8(e)(1).[12] No technical forms of pleading are required. *Id.* A party may set forth "two or more statements of a claim or defenses alternately or hypothetically, either in one count or defense or in separate counts or defenses." *Id.* 8(e)(2). This is true "regardless of the consistency and whether based on legal, equitable, or maritime grounds." *Id.*

■ Furthermore, Fed.R.Civ.P. 8(f) requires the district court to construe the pleadings to do "substantial justice." This means that a court will not dismiss a complaint on technical grounds when, construed as a whole, it provides adequate notice of the claims or defenses presented. *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This policy is reflected in the liberal leave to amend standards embraced by Rule 15.

#### b. Count Three (Unjust Enrichment)

In Count Three of its Complaint, Plaintiff "incorporates all the allegations in all paragraphs above as though fully restated herein," including Count One's allegation of an express oral contract (Doc. # 1 at 15). Although Defendant contends that Plaintiff cannot claim unjust enrichment in the face of an express contract, the argument is without merit.

■ The "mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery." *Adelman v. Christy,* 90 F.Supp.2d 1034, 1045 (D.Ariz. 2000) (applying Arizona law). If the plaintiff never received the benefit of the contractual bargain, the plaintiff may pursue a claim for restitution. *Adelman,* 90 F.Supp.2d at 1045; *USLife Title Co. of Arizona v. Gutkin,* 152 Ariz. 349, 355, 732 P.2d 579, 585 (App.1986) (criticizing the notion that the existence of a contract always bars unjust enrichment claims); *See Restatement of Restitution* § 40 cmt. c (1937) (when an agreement "is not enforceable as a contract, ... restitution for what

---

which to seek recovery. *Arthur v. United States by and Through Veterans Admin.,* 45 F.3d 292, 296 (9th Cir.1995). Plaintiff may therefore seek both an equitable remedy of estoppel (Count Two) and a legal remedy for breach of contract (Count One).

For Count Four, Defendant confuses the difference between implied contracts and implied covenants (Doc. # 6 at 10). While it is true that an implied-in-law contract cannot exist on an issue to which an express contract speaks, *Chanay v. Chittenden,* 115 Ariz. 32, 35, 563 P.2d 287, 290 (1977), Arizona incorporates the implied covenant of good faith and fair dealing in every contract, express or implied, *Rawlings v. Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986).

**12.** Although Plaintiff originally filed its Complaint in Arizona state court, Defendant's alternative pleading arguments, without more, would not support dismissal even under Arizona's procedural rules. "As a general mat-

ter, state procedural rules govern state lawsuits until they are removed to federal court." *Prazak v. Local 1 Int'l Union of Bricklayers & Allied Crafts,* 233 F.3d 1149, 1152 (9th Cir. 2000). The Federal Rules of Civil Procedure, in contrast, only "govern procedures after removal." Fed.R.Civ.P. 81(c).

"Because Arizona is a notice pleading state, extensive factual recitations are not required." *Rosenberg v. Rosenberg,* 123 Ariz. 589, 592, 601 P.2d 589, 592–93 (1979). Save the omission of "or maritime" from Ariz. R. Civ. P. 8(e), "[t]he federal rule ... is identical to [Arizona's]. Because Arizona has substantially adopted the Federal Rules of Civil Procedure, [Arizona courts] give great weight to the federal interpretation of the rules." *Anserv Ins. Servs., Inc. v. Albrecht,* 192 Ariz. 48, 960 P.2d 1159, 1160 (1998). Therefore, parties may plead alternatively or inconsistently. *MacCollum v. Perkinson,* 185 Ariz. 179, 189, 913 P.2d 1097, 1107 (App.1996).

has been performed is required to prevent unjust enrichment"). Therefore, the Court will deny Defendant's Motion to Dismiss this Count in the alternative.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. # 6) is **PARTIALLY GRANTED,** and **PARTIALLY DENIED** as to Count Three. The Clerk of the Court is directed to enter judgment on Counts One, Two, Four, and Five accordingly.